649 So.2d 799 (1995)
Don Suvell SIMMONS
v.
Sandra Kay SIMMONS.
No. 26,414-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
*800 Hunter, Scott, Blue & Johnson by Daryl Blue, for appellant.
North La. Legal Assistance Corp. by John J. Genova, for appellee.
Before HIGHTOWER and STEWART, JJ., and PRICE, J., Pro Tem.
HIGHTOWER, Judge.
Sandra Kay Simmons, defendant, appeals a joint custody award designating her estranged husband, Donald Suvell Simmons, as the primary domiciliary parent of their two minor children. She complains that the trial court refused to apply the adverse presumption, enunciated by LSA-R.S. 9:364(A), concerning any parent with a history of perpetrating family violence. We affirm.

Facts
Sandra and Don Simmons married in July 1973, and their union produced two children, David and Dawn, ages 14 and 11 at trial. The couple resided together until defendant left their Bridge City, Texas home on July 2, 1992.
Shortly after the physical separation, Sandra left David at her mother's home in Texas and moved with her young daughter to Wayne Town, Indiana to stay with a female friend. Soon thereafter, while Dawn remained with the acquaintance, defendant traveled to Altoona, Pennsylvania to seek employment where her former co-worker and present fiance, Randy Grable, resided. She currently lives there with her boyfriend's parents and has filed for divorce in that state.
Meanwhile, in August 1992, Don acquired physical custody of David from his mother-in-law. Later, he obtained Dawn from his wife's Indiana girlfriend and returned to Texas. Near the end of 1992, he and the minors established their residence in Ouachita Parish, Louisiana, near his relatives. When he subsequently filed suit requesting sole custody of the children, Sandra reconvened for similar relief.
At trial, Sandra claimed that Don had physically abused her throughout their marriage, requiring law enforcement intervention on several occasions as well as medical attention for her injuries. She said that the last act of violence occurred in April 1991, and that she later fled from Texas in fear of her safety. Plaintiff admitted having hit Sandra on occasion, but stated that this never transpired in the presence of the children and had been provoked by his wife's adulterous affair with Randy Grable. Defendant denied any such illicit relationship with her present fiance. The two children, during a chambers interview with the trial judge, disclosed that their parents "fought a lot *801 because of [their mother's] relationship with her current boyfriend."
The trial judge determined that the best interest of the children would be served through their continued residence with the father. Although finding that the couple argued and fought, the court concluded that "occasional existences [sic] of violence are not enough to constitute a history of violence" as required to trigger the rebuttable presumption of LSA-R.S. 9:364(A). Consequently, the court issued the previously described judgment and, also, granted Sandra reasonable visitations with the minors. This appeal ensued.

Discussion

Application of LSA-R.S. 9:364(A) Presumption
In her first assignment, defendant argues that the trial court erred in concluding she failed to prove a "history" of family violence precluding her husband from joint custody, pursuant to LSA-R.S. 9:364(A).
The subsection under consideration, LSA-R.S. 9:364(A), establishes a rebuttable presumption that no parent who "has a history of perpetrating family violence" shall be awarded sole or joint custody. This statutory rule may be overcome only by a preponderance of evidence that the perpetrating parent has successfully completed a treatment program, does not abuse alcohol or illegally use drugs, and is required by the child's best interest to serve in a custodial capacity. In adopting this provision as part of the Post-Separation Family Violence Relief Act (La.Acts 1992, No. 1091), the Legislature found that current custody laws failed to recognize the protractive nature of family violence:
[T]he problems of family violence do not necessarily cease when the victimized family is legally separated or divorced. In fact, the violence often escalates, and child custody and visitation become the new forum for the continuation of the abuse. Because current laws relative to child custody and visitation are based on an assumption that even divorcing parents are in relatively equal positions of power, and that such parents act in the children's best interest, these laws often work against the protection of the children and the abused spouse in families with a history of family violence. Consequently, laws designed to act in the children's best interest may actually effect a contrary result due to the unique dynamics of family violence.
LSA-R.S. 9:361.
The Act defines "family violence" to include physical or sexual abuse and any offense against the person as defined in the Criminal Code, excluding negligent injury and defamation, committed by one parent against the other parent or against any of the children. LSA-R.S. 9:362(3). Even so, the enactment does not indicate what constitutes "a history of perpetuating" such conduct. Hence, in order to resolve defendant's complaint, we must address the meaning of that statutory phrase and its applicability to the case sub judice.
Defendant argues that a single past act of "family violence" constitutes a "history of perpetrating" and triggers the presumption. We disagree. Had lawmakers intended that result, they would not have further qualified a term already adequately encompassing any tumultuous conduct by a parent during the domestic relationship. Furthermore, the stated purpose of the act and the very serious consequences of the presumption, in substantially curtailing parental rights,[1] militate against such an expansive interpretation of the statute. Consequently, the deliberate addition of the word "history" requires a court to look beyond simply whether "family violence" has ever occurred. Cf. Batiste v. Guillory, 479 So.2d 1044 (La. *802 App. 3d Cir.1985); Seymour v. Seymour, 423 So.2d 770 (La.App. 4th Cir.1982), both reviewing overall family situations rather than isolated outbursts of violence.
In deciding whether a parent has a "history of perpetrating family violence," the trial court should look at the entire chronicle of the family, remaining mindful that the paramount goal of the legislation is the children's best interest. Such factors as the number, frequency, and severity of incidents will be relevant, as well as whether the violence occurred in the presence of the children, and to what extent there existed provocation for any violent act. Stated differently, the determination must be based on a review of the total circumstances of the family, and necessarily involves a weighing of the evidence.
Even from the limited record available in the present case, it is obvious that the trial court heard conflicting testimony from the spouses, as well as a report from the children that their parents argued and fought extensively about the mother's relationship with Randy Grable. Although Sandra claimed that physical abuse caused her to enter the hospital and resulted in the police being called on several occasions, she managed to present documents relating to only one conflict, an encounter transpiring shortly before she left Texas. Nothing indicates that the father ever directed any anger toward the minors. Thus, after viewing the totality of circumstances in light of the children's best interest, the fact-trier found only occasional incidents of violence that may have been provoked by the wife's adultery, and that did not rise to the level of a "history of perpetrating family violence."
Of course, an appellate court is required to give great deference to the factual conclusions of the trial court which are based on reasonable evaluations of credibility and inferences of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Draper v. Draper, 556 So.2d 210 (La.App.2d Cir.1990). Accordingly, we find no manifest error in the district judge's refusal to apply the presumption of LSA-R.S. 9:364(A) to the situation before us. Obviously, our decision does not license such acts as admitted by plaintiff. Spousal abuse of any type should never be tolerated. We merely hold, as did the district court, that the evidence of such behavior in this case does not warrant the harsh remedy previously discussed. Without question, trial judges retain the latitude to evaluate such incidents in deciding custody matters.

Child Custody Determination
Defendant also contends that the trial court erred in designating the father as the primary domiciliary parent in the joint custody decree. We reject this argument.
In custody cases, the paramount consideration is always the best interest of the child. See former LSA-C.C. Art. 134 and, by reference, former Article 131.[2] See also LSA-C.C. Art. 131 (as reenacted); Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Wyatt v. White, 626 So.2d 816 (La.App. 2d Cir.1993). The two parties stand on equal footing at the outset of trial, and the court determines the best interest of the child based on the relative fitness and ability of the competing parties in all respects. Warren v. Warren, 617 So.2d 545 (La.App.2d Cir.1993), writ denied, 620 So.2d 846 (La. 1993), and authorities cited therein. Consequently, each case must be decided on the basis of its particular facts and circumstances by weighing and balancing those factors favoring and opposing custody for the respective parents. Id. A trial court's award of custody is entitled to great weight and will not be disturbed in the absence of a clear abuse of discretion. Bergeron, supra; Warren, supra.
In the case sub judice, the record reveals no reversible error. Although both parties are generally shown to be good and loving parents, the totality of the circumstances favors the father. By relocating closer to his own family, he has clearly established a more secure environment for the youngsters. In contrast, their mother's present *803 living situation and various past moves, in which she left the children in two different states while traveling to a third, do not present a stable situation. Cf. Schubert v. Schubert, 605 So.2d 666 (La.App. 2d Cir.1992), writ denied, 609 So.2d 230 (La.1992); Osborne v. McCoy, 485 So.2d 150 (La.App. 2d Cir.1986), writ denied, 488 So.2d 1027 (La. 1986); Looney v. Looney, 536 So.2d 728 (La. App. 3d Cir.1988). Stability of environment is an important factor in deciding a child's best interest. Hillidge v. McFarland, 566 So.2d 192 (La.App. 2d Cir.1990); Draper, supra. Nor are we impressed with Sandra's contention that the father will interfere with her reasonable visitations rights. His reluctance in allowing the children to see her, on the one occasion shown by testimony, may well have been prompted by a fear that they could be abducted to Pennsylvania.

Conclusion
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Upon finding the parent has a history of family violence, a court may only allow supervised child visitations that are conditioned upon the parent's participation in and completion of a treatment program. Unsupervised visitation will only be allowed upon that parent showing successful completion of treatment, nonabuse of alcohol and psychoactive drugs, no danger being posed to the child, and that the contact is in the child's best interest. LSA-R.S. 9:364(C). Upon rehearing in the recent case of State in the Interest of A.C., 93-1125 (La. 10/17/94), 643 So.2d. 743, the supreme court, in declaring § 364(D) unconstitutional, discussed the importance of a parent's right to a family relationship with his or her child and the risk of erroneous deprivation.
[2] Acts 1993, No. 261, § 1 revised and amended the child custody section of the Civil Code, effective January 1, 1994, but retained the "best interest of the child" standard for resolving custody disputes.