655 So.2d 1342 (1995)
Lynn Gildersleeve MICHELLI
v.
Victor Raymond MICHELLI, II.
No. 93 CA 2128.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*1344 Sylvia Roberts, Baton Rouge, for plaintiff-appellant Lynn Gildersleeve Michelli.
Ayn W. Stehr, amicus curiae-Capital Area Violence Intervention, Baton Rouge.
Richard Ducote, amicus curiae-Capital Area Violence Intervention, New Orleans.
Jack M. Dampf and Kathleen Callaghan, Baton Rouge, for defendant-appellee Victor Raymond Michelli, II.
Before LeBLANC, PITCHER and FITZSIMMONS, JJ.
PITCHER, Judge.
This is an appeal of the trial court's failure to determine visitation under the Louisiana Post-Separation Family Violence Relief Act. We reverse in part, affirm in part, and remand.

PROCEDURAL BACKGROUND
Victor Michelli (Mr. Michelli) and Lynn Gildersleeve Michelli (Mrs. Michelli) were married on September 6, 1986 in East Baton Rouge Parish. Two children were born of the marriage: Victoria Chipman Michelli and Victor Ray Michelli, III.
On November 19, 1992, Mrs. Michelli filed a petition for divorce. Mrs. Michelli sought custody of the minor children under LSA-R.S. 9:361 et seq. (the Post-Separation Family Violence Relief Act) alleging that Mr. Michelli was physically abusive to her and their minor children. In her petition, Mrs. Michelli also requested temporary sole care, custody, and control of the minor children. On January 12, 1993, a hearing was scheduled to determine the temporary custody of the Michellis' minor children. On the date of the hearing (January 14), the trial court rendered a judgment in accordance with the parties' stipulation wherein Mrs. Michelli was awarded temporary custody of the minor children, and Mr. Michelli was awarded supervised visitation. Mrs. Michelli's father, Robert V. Gildersleeve, Sr., was appointed as the supervisor.
A trial was held on the 8th, 10th, and 11th of March, 1993, to determine the issues of divorce, permanent alimony, custody, and child support. After the trial, the case was taken under advisement. On March 31, 1993, while the case was under advisement, Mrs. Michelli filed a motion for immediate termination of Mr. Michelli's temporary visitation and a rule for contempt. Mrs. Michelli alleged that during a visitation, Mr. Michelli violated the January 14 judgment by taking the minor children out on a boat ride when the court ordered that Mr. Michelli's visitation not involve taking the children out in a boat. On March 31, 1993, the trial court signed an order which immediately terminated Mr. Michelli's temporary visitation privileges, and ordered that on April 13, 1993, Mr. Michelli show cause why he should not be held in contempt for violating the January 14 judgment.
On April 13, 1993, at the scheduled hearing, the parties presented pleadings, stipulations, and arguments to the court on the rule for contempt. Subsequently, the court rendered a judgment holding Mr. Michelli in contempt for violation of the January 14 stipulated judgment. The trial court ordered that the March 31 order terminating Mr. Michelli's visitation privileges remain effective until a decision was rendered in the case.
On April 22, 1993, the trial court rendered judgment granting Mrs. Michelli a divorce.[1] The trial court found that she was not at fault in causing the breakup of the marriage. Mrs. Michelli was also granted custody of the minor children, and child support of $1,620.00 per month from Mr. Michelli. The trial *1345 court concluded that the Post-Separation Family Violence Relief Act was not applicable, and granted Mr. Michelli unsupervised visitation. Mrs. Michelli was not awarded permanent alimony because the trial court found that she had sufficient means for her support.
On June 11, 1993, Mrs. Michelli filed a motion for new trial and a motion for supervised visitation. On June 24, 1993, Mrs. Michelli filed a supplemental motion for new trial and a motion to terminate unsupervised visitation. Also, on June 24, 1993, Mr. Michelli filed a rule for contempt alleging that Mrs. Michelli (1) failed to notify him of their minor daughter's dance recital; (2) Mrs. Michelli took the children out of town without providing him with a telephone number or travel itinerary; and (3) dissipated the community business. On June 29, 1993, Mrs. Michelli filed a rule to make arrearages of child support executory and for contempt, attorney's fees, and court costs.
On July 6, 1993, the parties presented pleadings, stipulations, and arguments to the court on the motions for new trial and termination of Mr. Michelli's unsupervised visitation as well as the rules filed on June 25th and 29th. Judgment was rendered on July 6, 1993, finding Mrs. Michelli to be in contempt of court for encumbering the community property. The judgment ordered that the arrearages of child support be made executory, but dismissed the contempt action against Mr. Michelli. It was further ordered that Mr. Michelli's unsupervised visitation be terminated, and his visitation be supervised by his girlfriend, Desiree Cox, and his sister, Vickie Michelli. Mrs. Michelli's motion for new trial was denied, and the court ordered that this judgment supersede the judgment signed on June 4, 1993 with respect to visitation.
Mrs. Michelli now appeals, raising the following issues for review:[2]
1. The trial court's finding that sporadic acts of violence were committed by both parties was manifestly erroneous since R.S. 9:362(3) excludes reasonable acts of self defense by the abused party from the definition of "family violence".
2. The trial court committed reversible error in failing to apply R.S. 9:364(C) once it found sporadic acts of family violence had occurred.
3. The trial court clearly erred in ruling that [Ms. Michelli] could not offer evidence of [Mr. Michelli's] criminal charges and circumstances surrounding such charges, or in the alternative, could not make a proffer of such evidence.
4. The trial court committed reversible error in allowing [Mr. Michelli] to have supervised visitation once it was found [Mr. Michelli] had resumed drinking and naming as supervisors of such visitation his current girlfriend and his sister.
Mr. Michelli answered the appeal, alleging the following assignments of error:
1. The trial court erred when it revoked unsupervised visitation because of [Mr. Michelli's] alleged arrest for driving while intoxicated.
2. The trial court erred in finding Lynn Gildersleeve Michelli not at fault for purposes of permanent alimony.

POST-SEPARATION FAMILY VIOLENCE RELIEF ACT
Through assignments of error numbers one and four, Mrs. Michelli contends that the trial court committed reversible error in failing to apply LSA-R.S. 9:364(C) of the Post-Separation Family Violence Relief Act once the court found sporadic acts of family violence. Mrs. Michelli further contends that the court's finding that sporadic acts of violence were committed by both parties was manifestly erroneous since LSA-R.S. 9:362(3) excludes reasonable acts of self defense by the abused party.
LSA-R.S. 9:361 et seq., was adopted in 1992 as a continuing legislative effort to address *1346 the growing problem of domestic violence and intra-family child molestation. The legislative intent to address this problem was set forth in LSA-R.S. 9:361:
The legislature ... finds that the problems of family violence do not necessarily cease when the victimized family is legally separated or divorced. In fact, the violence often escalates, and child custody and visitation become the new forum for the continuation of the abuse. Because current laws relative to child custody and visitation are based on an assumption that even divorcing parents are in relatively equal positions of power, and that such parents act in the children's best interest, these laws often work against the protection of the children and the abused spouse in families with a history of family violence. Consequently, laws designed to act in the children's best interest may actually effect a contrary result due to the unique dynamics of family violence.
LSA-R.S. 9:364(C) was specifically designed to protect the child's interest by restricting the right of visitation of the abusing spouse in families with a history of family violence.[3] LSA-R.S. 9:364(C) provides that:
C. If the court finds that a parent has a history of family violence, the court shall only allow supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall only be allowed if it is shown by a preponderance of the evidence that the violent parent has successfully completed a treatment program, is not abusing alcohol and psychoactive drugs, poses no danger to the child, and that such visitation is in the child's best interest.[4]
Thus, in order for this provision to become operative, two things must occur. First, the court must find that there is family violence, and second, there must be a history of the family violence. With regards to the first finding, the legislature left little for guess or speculation, in that it defined family violence in the Act. LSA-R.S. 9:362(3) defines "family violence" as:
includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children.
The Act fails, however, to state what is necessary to establish a "history" of family violence. We must, therefore, determine the meaning of the phrase "history of family violence." According to Webster's Ninth New Collegiate Dictionary 573 (1988), "history" means "a chronological record of significant events often including an explanation of their causes; a treatise presenting systematically related natural phenomena; a branch of knowledge that records and explains past events; events that form the subject matter of a history; past events." Based upon this definition, we interpret the phrase "history of family violence" to include past events of "family violence" that have occurred during the marital relationship.
Mrs. Michelli urged the trial court to find that family violence had occurred in at least eight separate incidents that occurred during the six-year marriage. The first of these incidents occurred on June 6, 1988. The police were summoned to the Michellis' home for a reported family dispute. In the police report, Mr. Michelli admitted that he struck *1347 his wife in the face area. The police report further stated that the officer observed a cut over Mrs. Michelli's right eye and possibly a broken nose.
Henry Carriere, a friend of Mrs. Michelli's brother, testified by deposition about another incident that occurred at a lounge in Pass Christian. Mr. Carriere stated that Mr. Michelli was drunk, and Mr. Michelli began pushing up against Mrs. Michelli and calling her all kinds of names such as slut and whore. Mr. Michelli continued this behavior for approximately an hour. Mr. Carriere told Mr. Michelli to shut up and threaten to knock Mr. Michelli out. At this point, Mr. Michelli stopped his behavior and walked off.
Mrs. Michelli's mother, Mrs. Gildersleeve, testified about a June, 1991, incident that occurred when she had taken the couple's daughter to dinner. Mrs. Gildersleeve stated that upon arriving at the Michellis' residence after dining out, she was getting her granddaughter's things from the car while her granddaughter went inside the home. Mrs. Gildersleeve testified that after her granddaughter went in the home, her granddaughter came running out of the home screaming for help because Mr. Michelli was hitting Mrs. Michelli. Mrs. Gildersleeve stated that she went into the home and observed Mr. Michelli hitting Mrs. Michelli.
Testimony was presented about an incident that occurred on October, 1991, when Mrs. Michelli contacted the Battered Women's Program in Baton Rouge. The records of the Battered Woman's Program (Program) contained evidence that Mrs. Michelli reported to a representative of the Program that her husband had slapped, punched, and shoved her on numerous occasions. The Program's records also showed that Mrs. Michelli had described a recent incident in which Mr. Michelli had punched their daughter in the stomach and later shook their daughter in an effort to get her to tell Mrs. Michelli that Mr. Michelli did not punch her. At the trial, Mrs. Michelli's testimony about this incident was consistent with the Program's report.
Another alleged incident of family violence occurred during the summer of 1992. Mrs. Michelli testified that she and Mr. Michelli got into an argument and Mr. Michelli began cursing at her in the presence of the children. Mr. Michelli throw water in Mrs. Michelli's face, threaten to rape her, and attempted to pull her legs apart.
Mrs. Michelli testified that on September 4, 1992, Mr. Michelli became angry and while she was holding their son, Mr. Michelli threw her, along with their son, to the floor. On this occasion, Mrs. Michelli's fingers were cut when Mr. Michelli pulled car keys out of her hand. Mrs. Michelli testified that during this same incident, she was grabbed by the neck and choked by Mr. Michelli. Mrs. Michelli stated that she was able to escape and run down the street to a neighbor's home. The neighbor, Peggy Wetterauer, testified that on this particular day, Mrs. Michelli had red marks on her neck, and her index finger was bleeding. Mrs. Wetterauer further testified that the heel on one of Mrs. Michelli's shoes was broken, and she appeared to have been involved in an altercation.
In November, 1992, Mr. Michelli and Mrs. Michelli were driving home from a New Orleans Saints game, and Mr. Michelli stopped at Fairway View Bar in Baton Rouge. Mrs. Michelli stated that she told Mr. Michelli she wanted to go home, and Mr. Michelli could come back after dropping her home. Thereafter, Mr. Michelli began hitting Mrs. Michelli's legs and grabbed her hair and started banging her head against the window and the dashboard.
The last event of alleged family violence offered by Mrs. Michelli occurred in Freeport, Grand Bahamas. Mrs. Michelli testified that Mr. Michelli beat her and then threw her out of their hotel room. To corroborate her testimony, Mrs. Michelli offered the depositions of Detective Constable Higgs, a police officer with the Royal Bahamas Police, and Ednal Thompson, a security officer for the Royal Xanadu Hotel. In his deposition, Constable Higgs testified that he was summoned by Ednal Thompson to the hotel *1348 for a domestic incident involving Mr. Michelli and Mrs. Michelli. Constable Higgs stated that upon arriving at the scene, Mrs. Michelli was crying and appeared to be upset. Constable Higgs further stated that Mrs. Michelli told him that Mr. Michelli had beaten her and threw her out of their hotel room. Constable Higgs testified that at one point, while trying to resolve the domestic dispute, Mr. Michelli lunged at Mrs. Michelli and had to be restrained.
Mr. Michelli, in an effort to counter or diffuse the acts of violence described by Mrs. Michelli, testified that she was the aggressor in many of these alleged acts of violence.[5] He testified that on one occasion, as he attempted to leave their bedroom after an argument, Mrs. Michelli slung open the bedroom door striking him in the head.
Mr. Michelli further testified that during two arguments with Mrs. Michelli, he was bit by Mrs. Michelli. According to Mr. Michelli, one of these arguments occurred when they were on their way home from a New Orleans Saints game. Mr. Michelli stated that while on the way home, Mrs. Michelli attacked him with her finger nails and bit a hunk of meat out of his right arm. Mrs. Michelli testified that she bit Mr. Michelli in self defense.
Mr. Michelli stated that another argument occurred in the bathroom of their home. This argument is the same incident that Mrs. Michelli's mother, Mrs. Gildersleeve, testified about. Mr. Michelli stated that while arguing in the bathroom, Mrs. Michelli bit him on his chest and arm. However, since Mrs. Gildersleeve states that she saw Mr. Michelli hitting Mrs. Michelli, Mrs. Gildersleeve's testimony about this incident contradicts Mr. Michelli's testimony.
After hearing all of the evidence, the trial court, in its reasons for judgment, stated:
The court, after hearing the testimony of the parties and all witnesses, concludes that sporadic acts of violence committed by both parties do not rise to the level sufficient to trigger the application of R.S. 9:361 et seq.
This Court is of the opinion that the intent of the legislature in enacting the statute, was to insure that the children of the marriage were not placed in jeopardy of receiving harm by a parent who has had a history of violence or abuse that can be established by a pattern of abuse. No such pattern of abuse and violence were established by the facts of the case sufficient to warrant the denial of Mr. Michelli's visitation with his children.
Additionally, in its oral reasons on the motion for new trial, the trial court stated:
.... There was offensive touching between [the parties] in that they had family fights, not to the extent that one had more power than the other, and that [Ms. Michelli's] life was threatened or that she was so afraid for her life that, she had to leave and do something else. These people would fight with each other while they both were drinking....
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Recognizing the constraints of the appellate review standards noted above, we have difficulty with the trial court's articulated findings in the case sub judice.
The trial court, in making its two-step analysis of the facts, glanced over the events offered by Mrs. Michelli by grouping her proof with the evidence offered by Mr. Michelli in mitigation, and then finding mutual sporadic acts of violence. We believe the better approach was for the trial court to review each of the incidents of alleged violence offered by the moving party to determine if any or all of the incidents fell within the ambit of family violence as defined by the Act.
Had the trial court used this approach, it would have found, as we do, that at *1349 least seven of the eight incidents are batteries, as defined in the Louisiana Criminal Code. A battery-defined as the intentional use of force or violence upon the person of another-is physical contact whether injurious or merely offensive. See LSA-R.S. 14:33; State v. Dauzat, 392 So.2d 393, 396 (La.1980); Caudle v. Betts, 512 So.2d 389 (La.1987). We note that the trial court, in its oral reasons for denying the motion for new trial, viewed these acts as "offensive touchings". The Act does not differentiate between misdemeanors or felonies. Consequently, the trial court is mistaken if it viewed acts of violence that are classified as felonies as the only triggering mechanism for LSA-R.S. 9:364(C).
Another problem we have with the trial court's findings is its statement that the facts of the case do not support a finding that there has been "no such pattern of abuse or violence" which we infer to mean a "history of family violence." Having found seven of the incidents outlined by Mrs. Michelli to be acts of family violence, we believe that these events were sufficient enough to also find that a history had been established. As stated earlier, we find that the Act only requires evidence of past events of family violence and does not require that the events be frequent or continuous.
After the trial court concludes that a history of family violence exists, it must then make the crucial inquiry of whether that history, along with any other relevant factors, such as the number of violent acts, the frequency of those acts, and any evidence of substance abuse, would lead one to reasonably assume that child visitation would be the new forum for abuse of the child or the abused parent. In the case before us, the incidents of family violence increased over last two years of the marriage (at least four incidents within the last year of the marriage); the violent acts occurred in the presence of one or both of the minor children on two occasions; and the record reflects evidence of substance abuse. Therefore, we conclude that the trial court erred by failing to invoke the supervised visitation provisions of LSA-R.S. 9:364(C).

PROFFER
Through assignment of error number three, Mrs. Michelli contends that evidence of Mr. Michelli's criminal charges and circumstances surrounding them must be considered by a court faced with determining the safety and welfare of little children. Mrs. Michelli further contends that the trial court erred in failing to allow her to make a proffer of such evidence.
According to LSA-C.C.P. art. 1636, "[w]hen [a] court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence." (Emphasis ours). LSA-C.C.P. art. 1636 is mandatory, not discretionary. Anderson v. Casualty Reciprocal Exchange, 602 So.2d 282, 284 (La.App. 2nd Cir. 1992). However, the trial judge has the discretion to receive the proffer in full, or to require a statement setting forth the nature of the evidence. LSA-C.C.P. art. 1636. Neither form of a proffer was allowed in this case.
As was stated in McLean v. Hunter, 495 So.2d 1298, 1305 (La.1986),:
The very purpose of requiring a proffer is to preserve excluded testimony so that the testimony (whatever its nature) is available for appellate review. Without a proffer, appellate courts have no way of ascertaining the nature of the excluded testimony.
In the case at hand, the trial court concluded that arrests were inadmissible evidence and were also inadmissible on a proffer. We do not believe the court's conclusion is a completely accurate statement of the law. Clearly, LSA-C.C.P. art. 1636 requires that the trial judge permit a party to make a proffer of evidence ruled inadmissible.
Additionally, LSA-C.E. art. 609(F), relative to civil proceedings, provides:
F.... [e]vidence of the arrest, indictment, or prosecution of a witness is not admissible for the purpose of attacking his credibility.
*1350 Official Comment (d) to Article 609 provides that:
Paragraph F is not intended to change the prior jurisprudence to the effect that evidence of arrest, indictment or prosecution may be admitted if it has relevance independent of the suggestion that the witness is unworthy of belief, as, for example, when independently relevant to show bias.
Although Article 609 applies to attacking the credibility of a witness in civil proceedings, the quoted comment cites criminal cases as its support. Thus, Louisiana law allows the introduction of a witness' arrest for relevancy purposes independent of attacking the witness' credibility.
Since a proffer was not permitted, we cannot determine the nature of the excluded testimony. Thus, we conclude that the trial court erred in denying Mrs. Michelli the opportunity to make a proffer of Mr. Michelli's criminal charges and circumstances surrounding those charges. Therefore, we reverse the trial court's judgment denying Mrs. Michelli the opportunity to make a proffer. This assignment has merit.

PERMANENT ALIMONY
In his answer to the appeal and through his assignment of error number two, Mr. Michelli contends that the trial court erred in finding Mrs. Michelli free from fault in the breakup of the marriage. Mr. Michelli further contends that there was no proof submitted at trial that Mrs. Michelli was free from fault in the breakup of the marriage. Mr. Michelli argues that Mrs. Michelli drank alcohol on numerous occasions and was both verbally and physically abusive to him.
A spouse seeking permanent alimony must be without fault, and the burden of proof is upon the claimant. LSA-C.C. art. 112A(1). As used in LSA-C.C. art. 112, the word "fault" contemplates conduct or substantial acts of commissions or omissions by the claimant spouse violative of martial duties and responsibilities. To constitute fault sufficient to deprive a spouse of permanent alimony, the spouse's misconduct must not only be of a serious nature, but it must also be an independent contributory or proximate cause of the separation. Baxter v. Baxter, 607 So.2d 823, 825 (La.App. 1st Cir. 1992). As with any factual finding, a trial court's findings of fact relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. Gitschlag v. Gitschlag, 593 So.2d 1331, 1334 (La.App. 1st Cir. 1991).
Mr. Michelli contends that Mrs. Michelli's constant drinking and physical and verbal abuse toward him rises to the level of marital fault. A spouse's constant drinking and vulgar name calling of the other spouse in the presence of others is sufficient to show that the spouse was guilty of serious misconduct that was independently contributory to the breakup of the marriage. See Roland v. Roland, 519 So.2d 1177 (La.App. 1st Cir. 1987). Additionally, verbal abuse can constitute cruel treatment if it is particularly vicious and persistent to the extent it renders the common life insupportable. Fountain v. Fountain, 93-2176, p. 6 (La.App. 1st Cir. 10/7/94); 644 So.2d 733, 738.
The record before us establishes that Mr. Michelli's sister, Vickie Michelli, and his friend/employee, Oliver Powell[6] testified that Mrs. Michelli would frequently drink alcohol. However, Mrs. Michelli's testimony, that she did not drink alcohol during her two pregnancies or while breast feeding her children, was corroborated by Mr. Michelli who stated that Mrs. Michelli did not drink, in his presence, during her pregnancies and while nursing the children. Based upon this testimony, there was a period of almost three years of the six year marriage that Mrs. *1351 Michelli did not consume alcohol. In subsequent testimony, Mr. Michelli contradicted his testimony that Mrs. Michelli did not drink during her pregnancies and while nursing. Mr. Michelli stated that Mrs. Michelli consumed wine while pregnant because her doctor told her that she could drink wine while pregnant.
In reference to verbal abuse, the record reflects that Mrs. Michelli would call her husband a "dago" or made comments that he was from the "wrong side of the tracks". Mrs. Michelli testified that Mr. Michelli was proud of his Italian heritage, and she only referred to him as a "dago" in a joking manner. Adrien Percy testified that both Mr. Michelli and Mrs. Michelli used obscene language toward each other during arguments.
With regards to physical abuse, Mr. Michelli's testimony portrayed Mrs. Michelli as the aggressor of acts of violence. Vickie Michelli and Oliver Powell only testified about one specific incident of Mrs. Michelli's physical abuse. Both Vickie Michelli and Oliver Powell testified that they observed a gash on Mr. Michelli's arm, and Mr. Michelli told both of them that Mrs. Michelli bit him. However, Mrs. Michelli testified that because Mr. Michelli was choking her, she bit Mr. Michelli in self-defense.
After hearing all of the conflicting evidence, the trial court found that Mrs. Michelli's was free from fault in the marital breakup and was entitled to permanent alimony. However, the court concluded that since Mrs. Michelli had sufficient means for her support, she would not receive any permanent alimony. We cannot conclude that the trial court was manifestly erroneous in its finding that Mrs. Michelli was free from fault in the breakup of the marriage. The finding of trial court will not be disturbed on appeal. This assignment lacks merit.

OTHER ISSUES
Because we find that the trial court should have applied the Post-Separation Family Violence Relief Act, a discussion of Mrs. Michelli's assignment of error number four and Mr. Michelli's assignment of error number one is not necessary.

CONCLUSION
For the foregoing reasons, the trial court's ruling refusing to allow Mrs. Michelli to make a proffer is reversed. That portion of the judgment signed on June 4, 1993, wherein the trial court failed to apply the Post-Separation Family Violence Relief Act and designated a visitation plan is reversed. This case is remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed. Cost of this appeal are assessed to Mr. Michelli.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
FITZSIMMONS, J., concurs with reasons.
FITZSIMMONS, Judge, concurring.
I concur in the result.
In its desire to protect the dysfunctional family, the legislature sought to redress the common ground that rifes the very fabric of society: family discord which ultimately leads to violence as defined in the criminal code under such headings as assault, battery, or worse. The idea is to protect the other parent, and the children from the reckless disregard one human being, either through illness or rage, could foster on the innocent. This desire has left the courts with the difficult task of deciding what constitutes the acts necessary to formulate a flow or "history of violence."
History is defined as "a relation of incidents or a series of events." The Oxford English Dictionary 261 (2d ed. 1989). A "history of violence" does not only mean many acts over a protracted period of time. Rather, two or three acts within a short time frame or sporadic exchanges over a longer period of time may well constitute a history.
It is not necessary that acts be linked together to form a continual net of abuse *1352 toward the innocent parent and children. Nor is a pattern of repetitive assaultive behavior required to create a history. Violent history simply means the consummation of more than one isolated act of anger. A "history of family violence" exists when the trier of fact is confronted with acts of battery or assaultive behavior, and their existence is sufficient to indicate reckless disregard for the well being of the innocent parent and children.
The trial court erred in failing to find a history of family violence based on the facts of this case. The trial court erred in failing to apply the mandatory provisions of La.R.S. 9:361, et seq. The trial court erred in appointing a friend and relative of the abusive spouse as supervisors for the visitation. See La.R.S. 9:362(5).
NOTES
[1] A written judgment on the trial was not signed until June 4, 1993.
[2] Ms. Michelli took a devolutive appeal from both the judgment signed on June 4, 1993 and the superseding judgment rendered on July 6, 1993.
[3] Arizona and Wyoming have enacted statutes similar to LSA-R.S. 9:364(C) which presume that domestic abuse is contrary to the child's best interests and requiring their courts to consider domestic abuse when arranging visitation. Ariz. Rev.Stat. § 25-332 (1993); Wyo. Stat. § 20-2-113(a) (1994). See Naomi R. Cahn, Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions, 44 Vanderbilt Law Review 1041, 1070 (1991).
[4] LSA-R.S. 9:362(5) provides, in pertinent part, that:

(5) ... The supervising person shall not be any relative, friend, therapist, or associate of the parent perpetrating family violence.
[5] We note that Mr. Michelli did not deny the occurrence of these acts of violence.
[6] Because of missing tapes, the testimony of some of the witnesses was retaken. During retaking of the testimony, "Oliver Powell", a witness, was referred to as Oliver Power. However, for purposes of this opinion, he will be referred to as "Oliver Powell" as stated in the March 8th-11th trial transcript.