KYLE DURAND            *       NO. 2022-CA-0300

VERSUS                 *

                              COURT OF APPEAL

KANDY ROSE             *

                              FOURTH CIRCUIT

                *

                              STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-09242, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Dale N. Atkins)

LaMarre T. Elder
Parker & Elder LLC
1100 Poydras
Suite 2900
New Orleans, LA 70163

      COUNSEL FOR PLAINTIFF/APPELLANT

Kandy Rose
9235 Dewberry Blossom Lane
Houston, TX 77064

      DEFENDANT/APPELLEE, IN PROPER PERSON

                      **AFFIRMED IN PART, REVERSED
                      IN PART, AND JUDGMENT RENDERED**

                      **SEPTEMBER 15, 2022**

*JCL*

*PAB*

*DNA*

This appeal arises from an initial setting of custody wherein the district court awarded the parties joint custody of their two minor children, designated the mother as the domiciliary parent, and implemented a joint custody plan allocating physical custody of the minor children. The court further allowed the minor children to remain with their mother, who had relocated with the minor children to Texas. For the reasons that follow, we affirm in part, reverse in part, and render judgment.

## FACTS AND PROCEDURAL HISTORY

Kandy Rose ("Mother") and Kyle Durand ("Father") are the parents of two minor children ("Children"), who were six and eight years old at the time of the proceedings conducted in the district court. The parties were never married, but lived together with Children until Mother moved with Children to Texas in the Houston area[1] in November 2021. Mother did not provide Father with notice of her intent to relocate Children's principal residence prior to moving out of state.

---

[1] Mother testified that "[m]ost of [her] family is in Houston," and Father testified that he sent Mother and Children to Houston after Hurricane Ida. Mother first moved to Katy. Mother was ultimately served with the petition to establish custody and subsequent pleadings at a Houston address.

On November 12, 2021, Father, *pro se*, filed a petition to establish custody requesting sole custody of Children, and the matter was set for hearing on January 13, 2022. After retaining legal representation, Father filed an ex parte motion for temporary sole custody in accordance with La C.C.P. art. 3945 and a request for a civil warrant directed to law enforcement authorities to remove Children and return them to Father pending further orders of the district court. Father further sought injunctive relief in the form of a temporary restraining order prohibiting Mother from removing Children from the state pending further orders of the court, as well as a preliminary injunction and a permanent injunction to the same effect.

By order signed on November 23, 2021, the district court denied Father's ex parte motion for temporary sole custody and request for civil warrant but granted his request for a temporary restraining order and set the matter for hearing on December 20, 2021. The hearing was reset for January 13, 2022 upon the request of Father based on his inability to serve Mother prior to the scheduled hearing. The hearing was reset again for January 19, 2022 on motion of Father. When the parties appeared on January 19, 2022, Mother requested a continuance in order to obtain counsel. The district court granted the continuance but held Mother in contempt of court for failing to comply with the temporary restraining order.

A hearing was conducted on February 9 and 10, 2022. At the conclusion of the hearing, the matter was taken under advisement. Thereafter, by judgment dated March 11, 2022, the district court denied Father's request for sole custody, awarded the parties joint custody of Children with Mother designated as the domiciliary parent and with Father having physical custody of Children the first weekend of every month and during the summer months, and a holiday schedule as

set forth by the court. The court allowed Children to remain with Mother in Texas. Thereafter, Father brought this appeal.

## DISCUSSION

### *Custody*

The district court found that Mother left the parties' shared home as a result of domestic violence. Father argues that the district court's finding of domestic violence is not supported by the evidence presented at trial. He further argues that the district court erred by not applying the factors set forth in La. C.C. art. 134 for determining Children's best interests.

The Post-Separation Family Violence Relief Act ("Family Violence Act") was designed to protect a child's interest by restricting the rights of an abusing parent in families with a history of family violence. *Michelli v. Michelli*, 93-2128, p. 5 (La. App. 1 Cir. 5/5/95), 655 So.2d 1342, 1346. The statute creates a presumption that "no parent who has a history of perpetrating family violence" shall be awarded sole or joint custody of children. La. R.S. 9:364(A). Moreover, "[i]f the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent pursuant to [La.] R.S. 9:341." La. R.S. 9:364(E). La. R.S. 9:341 provides for supervised visitation between the abusive parent and the child or children pending the fulfillment of certain conditions.

Louisiana Civil Code article 134(B) similarly provides that in cases involving a history of committing family violence as defined in the Family Violence Act, whether or not a party has sought relief under any applicable law, the court is to determine an award of custody or visitation in accordance with La. R.S. 9:341 and La. R.S. 9:364. "The court may find a history of perpetrating family

3

violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. La. R.S. 9:364(A)." " 'Family violence' includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children." La. R.S. 9:362(4).

The presumption that no parent who has a history of perpetrating family violence should be awarded sole or joint custody can be overcome, as provided by La. R.S. 9:364(B), in pertinent part:

> B. The presumption shall be overcome only if the court finds all of the following by a preponderance of the evidence:
>
> (1) The perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in R.S. 9:362, or a treatment program designed for sexual abusers, after the last instance of abuse.
>
> (2) The perpetrating parent is not abusing alcohol or using illegal substances scheduled in R.S. 40:964.
>
> (3) The best interest of the child or children, considering the factors listed in Civil Code Article 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the child or children.

Thus, once the Family Violence Act has been triggered by a finding of a history of family violence, an additional burden of proof is imposed upon the parent who has been found to have a history of perpetrating family violence. That parent must overcome the presumption that he cannot be awarded sole or joint custody of the children by proving that he has completed a treatment program as

defined by the Family Violence Act, that he is not abusing alcohol or using illegal drugs, and that the best interests of the children require him to be the custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interests of the children. La. R.S. 9:364(B); *Nettles v. Nettles*, unpub., 13-1164 (La. App. 1 Cir. 12/27/13), 2013 WL 6858325, *2.

In *Simmons v. Simmons*, 26,414, pp. 3-4 (La. App. 2 Cir. 1/25/95), 649 So.2d 799, 802, the court noted:

> In deciding whether a parent has a "history of perpetrating family violence," the trial court should look at the entire chronicle of the family, remaining mindful that the paramount goal of the legislation is the children's best interest. Such factors as the number, frequency, and severity of incidents will be relevant, as well as whether the violence occurred in the presence of the children, and to what extent there existed provocation for any violent act. Stated differently, the determination must be based on a review of the total circumstances of the family, and necessarily involves a weighing of the evidence.

The provisions of the Family Violence Act "become operative if the court finds that there has been family violence and that there is a history of family violence." *Michelli*, 93-2128, p. 6, 655 So.2d at 1346; *Melancon v. Russell*, 18-48, pp. 6-7 (La. App. 5 Cir. 10/17/18), 258 So.3d 955, 960. Further, the Family Violence Act "only requires evidence of past events of family violence and does not require that the events be frequent or continuous." *Michelli*, 93-2128, p. 11, 655 So.2d at 1349. "Neither the provisions of the Family Violence Act nor the case law requires that relief under this Act be specifically pleaded, where the allegations of abuse have been raised in the pleading or tried by the express or implied consent of the parties." *Melancon*, 18-48, p. 7, 258 So.3d at 960 (citing *Dufresne v.*

5

*Dufresne*, 08-215, 08-216, p. 11 (La. App. 5 Cir. 9/16/08), 992 So.2d 579, 587; *Nettles*, 13-1164, 2013 WL 6858325, *2, n. 2).

Mother testified that she left the home she shared with Father and Children because of domestic violence. She recounted an incident of physical violence that occurred on August 4, 2021, when Father struck her, causing her to sustain a black eye. She stated that Children witnessed the physical assault. Father admitted that Mother sustained a black eye during a domestic argument but claimed that the injury was caused when "her eye ran into [his] elbow." A friend of Father used the same terminology to explain the cause of the injury. The district judge found that Father and his witness' use of "the same unique phrasing to describe the incident" "seemed crafted to avoid the appearance of domestic violence."

Mother further testified that Father threatened to kill her. Father denied making such a threat. A domestic violence advocate testified that she counseled Mother for emotional and physical abuse suffered during the last two years of Mother's relationship with Father. Mother's sister stated that Father was controlling and isolated Mother from her family. Both parties testified that Father came to Texas and took the car Mother was using, leaving her and Children without transportation. The district court found that this incident provided further credibility to Mother's allegations of abusive behavior.

"We give great deference to the [district] court's findings in matters of credibility, as the district court is the 'best position to evaluate the demeanor and mannerisms of the witnesses.' " *Cockheran o/b/o Cockheran v. Christopher*, 21-0370, 21-0371, p. 11 (La. App. 4 Cir. 10/28/21), 331 So.3d 389, 396 (quoting *Hiatt v. Duhe*, 17-0574, p. 7 (La. App. 4 Cir. 1/31/18), 238 So.3d 484, 489). "A [district] court's determination of domestic abuse is entitled to great weight and will not be

6

disturbed on appeal absent a clear abuse of discretion." *Melancon*, 18-48, p. 8, 258 So.3d at 961 (citing *Dufresne*, 08-215, 08-216, p. 8, 992 So.2d at 586).

We find no abuse of discretion in the district court's finding that Father has a history of perpetuating family violence and that the Family Violence Act governs the determination of custody. Father presented no evidence to overcome the presumption that he cannot be awarded sole or joint custody of Children. *See* La. R.S. 9:364(B). It was therefore unnecessary for the district court to consider the factors set forth in La. C.C. art. 134. Accordingly, we affirm the district court's ruling denying Father's request for sole custody. However, for the reasons discussed below, we find that the district court committed legal error in awarding Father joint custody of Children and in awarding Father unsupervised visitation with Children.[2]

"The application of statutes is a question of law." *Dillard Univ. v. Barfield*, 13-1336, p. 24 (La. App. 4 Cir. 4/2/14), 140 So.3d 52, 54 (citing *First Nat. Bank, USA v. DDS Const., LLC,* 11-1418, p. 10 (La. 1/24/12), 91 So.3d 944, 952). An appellate court reviews questions of law *de novo* to determine whether the trial court was legally correct or incorrect. *A & A Mech., Inc. v. Satterfield & Pontikes Constr. Grp., LLC*, 11-0784, p. 3 (La. App. 4 Cir. 1/11/12), 83 So.3d 363, 366 (citing *Saavedra v. Dealmaker Devs., LLC*, 08-1239, p. 6 (La. App. 4 Cir. 3/18/09), 8 So.3d 758, 762). "Failure to apply the provisions of [the Family Violence Act] is

---

[2] We note that the issues relating to these legal errors were not raised or addressed in the district court and are not raised by the parties in their appellate briefs. Rule 1.3, Uniform Rules, Courts of Appeal provides the court of appeal "will review only issues which were submitted to the [district] court and which are contained in specification or assignments of error, *unless the interest of justice clearly requires otherwise.*" (emphasis added). Additionally, La. C.C.P. art. 2164 gives an appellate court authority to "render any judgment which is just, legal, and proper upon the record on appeal." Given the strong public policy behind the Family Violence Act, in the interest of justice, we review *sua sponte* the correctness of the district court's award of joint custody and award of unsupervised visitation to Father.

reversible legal error, and the appellate court should conduct a *de novo* review of the record and render judgment on the merits." *Lewis v. Lewis*, 34,031, pp. 3-4 (La. App. 2 Cir. 11/3/00), 771 So.2d 856, 859 (citing *Hicks v. Hicks,* 98-1527 (La. App. 3 Cir. 5/19/99), 733 So.2d 1261; *Simmons*, *supra*). Where, however, the legal error does not affect the entirety of the district court's ruling, the appellate court should confine its *de novo* review to only those portions of the ruling that are at issue. *See State ex rel. Dep't of Soc. Servs. v. Whittington*, 15-1118, 15-1119, p. 4 (La. App. 4 Cir. 5/18/16), 193 So.3d 1234, 1238 (citing *Banks v. Children's Hosp.*, 13-1481, p. 13 (La. App. 4 Cir. 12/17/14), 156 So.3d 1263, 1272; *Lam ex rel. Lam v. State Farm Mut. Auto. Ins. Co.*, 05-1139, p. 3 (La. 11/29/06), 946 So.2d 133, 135-36).

Once the Family Violence Act has been triggered by a finding of a history of family violence, the parent who has been found to have a history of perpetrating family violence "must overcome the presumption that he cannot be awarded sole or joint custody of the children by proving that he has completed a treatment program as defined by the Family Violence Act, that he is not abusing alcohol or using illegal drugs, and that the best interests of the children require him to be the custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affects the best interests of the children." La. R.S. 9:364(B); *Nettles*, 13-1164, 2013 WL 6858325, *2.

A *de novo* review of the record reveals no evidence that Father completed a treatment program as defined by the Family Violence Act, that he is not abusing alcohol or using illegal drugs, and that the best interests of Children require him to be the custodial parent because of Mother's absence, mental illness, or substance abuse, or such other circumstances which affects the best interests of Children. Thus, the district court erred in awarding the parties joint custody.

Moreover, if the district court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent pursuant to La. R.S. 9:341. *See* La. R.S. 9:364(E). La. R.S. 9:341(A) provides, in pertinent part, as follows:

> Whenever the court finds by a preponderance of the evidence that a parent has subjected any of his or her children or stepchildren to family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132, has subjected any other household member, as defined in R.S. 46:2132, to a history of family violence as defined in R.S. 9:364(A), or has willingly permitted such abuse to any of his or her children or stepchildren despite having the ability to prevent it, the court shall allow only supervised visitation between the abusive parent and the abused child or children until such parent proves by a preponderance of the evidence at a contradictory hearing that the abusive parent has successfully completed a court-monitored domestic abuse intervention program, as defined in R.S. 9:362, since the last incident of domestic violence or family abuse.

There is no record evidence that Father has successfully completed a court-monitored domestic abuse intervention program since the last incident of violence or abuse to allow Father's unsupervised visitation with Children. Therefore, the district court erred in awarding Father unsupervised visitation with Children.

Accordingly, we reverse the award of joint custody and unsupervised visitation by Father and render judgment awarding sole custody of Children to Mother with all visitation by Father to be supervised.

### *Relocation*

"The district court's determination in a relocation case is entitled to great weight and may only be overturned upon a clear showing of abuse of discretion." *Whittington*, 15-1118, 15-1119, p. 3, 193 So.3d at 1237 (citing *Curole v. Curole,* 02-1891, p. 4 (La. 10/15/02), 828 So.2d 1094, 1096). "In conducting our review to

determine whether the district court abused its discretion, we must accept each factual finding the district court made in arriving at its conclusion, unless a particular factual finding is manifestly erroneous." *Id.* (citing *LaGraize v. Filson,* 14-1353, p. 15 (La. App. 4 Cir. 6/3/15), 171 So.3d 1047, 1054).

"'Relocation' means a change in the principal residence of a child for a period of sixty days or more, but does not include a temporary absence from the principal residence." La. R.S. 9:355.1(2). "Principal residence of a child" means:

> (a) The location designated by a court to be the primary residence of the child.
>
> (b) In the absence of a court order, the location at which the parties have expressly agreed that the child will primarily reside.
>
> (c) In the absence of a court order or an express agreement, the location, if any, at which the child has spent the majority of time during the prior six months.

La. R.S. 9:355.1(1).

"The person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." La. R.S. 9:355.10.

Father contends that the district court erred in failing to find that Mother's relocation was made in good faith, and erred in reaching the best interest prong of the relocation test without a finding of good faith. It is true that the district court did not make any specific finding regarding good faith. However, the district court concluded in its reasons for judgment that it "found credible [Mother's] testimony that she left the parties' shared home as a result of domestic violence." We cannot disturb this factual finding absent a determination that the factual finding is manifestly erroneous. *See Whittington*, 15-1118, 15-1119, p. 3, 193 So.3d at 1237.

"We therefore consider the question of Mother's good faith *de novo* based on our review of the record." *See Whittington*, 15-1118, 15-1119, p. 5, 193 So.3d at 1238.

Regarding "good faith," this Court has explained:

> While the relocation statute requires a good faith finding, it does not define the term. However, "jurisprudence has defined the meaning of the term good faith in this context as a legitimate or valid reason for the move." *McLain v. McLain*, 2007-0752, p. 13-14 (La. App. 4 Cir. 12/12/07); 974 So.2d 726, 734. In contrast, "[r]elocations that are based on a frivolous reason, no reason, or just to interfere with the noncustodial parent's visitation with the children do not satisfy the good faith requirement." *Id*. (internal quotations and citations omitted). Legitimate reasons for relocation include: to be close to significant family or other support networks; for significant health reasons; to protect the safety of the child or another member of the child's household from a significant risk of harm; to pursue a significant employment or educational opportunity; or to be with one's spouse (or equivalent) who is established, or is pursuing a significant employment or educational opportunity in another location. *Id.*

*Whittington*, 15-1118, 15-1119, p. 6, 193 So.3d at 1239.

In the case *sub judice*, Mother presented evidence of ongoing abuse by Father. Mother's sister stated that Father was controlling and isolated Mother from her family. Mother's domestic violence advocate testified that she counseled Mother for emotional and physical abuse suffered during her relationship with Father. Mother stated that Father struck her during a domestic argument three months before she relocated to Texas, causing her to sustain a black eye. Mother further stated that Father threatened to kill her. Mother testified that she left the home she shared with Father because of the domestic violence perpetrated by Father. According to Mother, "[m]ost of [her] family is in Houston," and therefore, the principal source of her family support in raising Children would lie in the Houston area.

There is no evidence from the testimony that Mother's motivation for moving to the Houston area was frivolous or that the move was an attempt to limit Father's access to Children. Further, the record is void of any evidence to challenge Mother's good faith motives in relocating to Texas. The record supports the conclusion that the relocation was made in good faith.

In determining the best interest of the children, La. R.S. 9:355.14 lists the following factors to be considered:

> A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:
>
> (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
>
> (3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
>
> (6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

Father argues that the district court erred in failing to consider all of the "best interest" factors required for making its relocation determination.

Regarding a district court's failure to consider all of the statutory factors in its relocation determination, this Court has explained:

> It is well established that "the trial court is not required to expressly analyze each statutory relocation factor in its oral or written reasons for judgment in a relocation case." *Gathen v. Gathen*, 2010-2312, p. 12 (La. 5/10/11), 66 So.3d 1, 9. "The trial court's failure to expressly analyze each factor does not constitute an error of law that would allow *de novo* review." *Id.* However, in *H.S.C. v. C.E.C.*, 2005-1490, p. 9 (La. App. 4 Cir. 11/8/06), 944 So.2d 738, 743, this Court held that where the record does not support a finding that the trial court actually considered each relocation factor, *de novo* review, rather than reversal, was the appropriate remedy. In *Smith v. Smith*, 44,663, p. 18 (La. App. 2 Cir. 8/19/09), 16 So.3d 643, 654, the Second Circuit determined that the trial court committed legal error when it evaluated the case based on the best interest of the child factors set forth in La. C.C. 134, rather than the

> relocation factors. Accordingly, a *de novo* review of the appropriate factors was conducted. The Fifth Circuit has also held that where the record does not support a finding that the trial court actually considered each factor, prejudicial legal error has occurred; and the court of appeal may remedy the deficiency by *de novo* review of the record. *Johnson v. Spurlock*, 2007-949, p. 7 (La. App. 5 Cir. 5/27/08), 986 So.2d 724, 728; *See also, Bailey v. Bailey*, 2016-0212, p. 6 (La. App. 1 Cir. 6/3/16), 196 So.3d 96, 100.

*Mathes v. Faucheux*, 17-0329, p. 10 (La. App. 4 Cir. 8/9/17), 226 So.3d 503, 510.

At the conclusion of the custody hearing, the district court reviewed the factors in determining the best interest of the child contained in La. C.C. art. 134. In its written reasons for judgment, the district court touched on the first, second, sixth, and eleventh relocation factors contained in La. R.S. 9:355.14. In his appellate brief, Father argues that the first, fifth, sixth, and eighth factors contained in La. R.S. 9:355.14 militate against Mother's right to relocate Children to Texas. In accordance with these precepts, we now conduct a *de novo* review of the record to determine whether relocation was appropriate in this case.

*(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.*

It is uncontested that both parties have a close relationship with Children. Mother, Children, and her thirteen year old daughter from a prior relationship are currently living with Mother's niece in Texas. Prior to their relocation, Children lived their entire lives in New Orleans. Father's parents and his brothers and sisters live in New Orleans. Mother's aunt lives in New Orleans, although Mother stated that she has not spoken to her aunt since moving to Texas. Mother concluded that she "do[es] not have family support in New Orleans." Mother's older sister lives in Texas.

14

*(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.*

At the time of the district court proceedings, Children were six and eight years old. Mother stated that the schools Children are currently attending are better than the schools in New Orleans and that both children are participating in extracurricular activities. Father offered no evidence that Children's relocation to Texas will likely adversely impact their educational development.

*(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.*

Mother demonstrated a willingness to facilitate Father's custody and visitation with children, as long the right mechanisms are in place, such as someone other than herself participating in the exchange of Children or dropping off and picking up Children at a neutral location, such as a police station.

*(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.*

There is no record evidence of Children's views on relocation.

*(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.*

Father contends that Mother's restriction of his contact with Children after they relocated to Texas and her violation of the temporary restraining order establish that it is unlikely Mother will facilitate the relationship of Children and Father and comply with the custody and visitation plan set by the district court.

Mother testified that she initially allowed Father to speak with Children but that after he became emotionally abusive and upset Children during a call in December 2021, she blocked Father's phone number. Father has had no contact

15

with Children since then. Mother further testified that she made the decision to block Father's number after discussing the matter with her domestic violence case manager and the police. Mother stated that she intends to facilitate Father's custody and visitation with Children because she "want[s] their father to be in their life (sic)."

Although the district court found Mother in contempt of court, the finding of contempt is not supported by the record. The contempt judgment declared Mother to be in contempt for "failing to abide by the Court Order signed November 23, 2021, ordering her to return [Children] . . . to the Jurisdiction of th[e] Court." However, the November 23, 2021 order did not order Mother to return Children. Rather, the order "restrain[ed], enjoin[ed] and prohibit[ed] [Mother] . . . from removing [Children] from this State's jurisdiction, pending further orders of [the district court]."[3] There is no evidence that Mother violated the temporary restraining order.

*(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.*

Father asserts that there is no evidence as to the quality of the education offered by the schools Children are currently attending or "how [Children] [are] adapting to their new school, home or life." Mother stated that the schools Children are currently attending are better than the schools in New Orleans and that both children are participating in extracurricular activities. According to Mother, Father wanted to change the school Children were attending in New Orleans to afford them better educational opportunities and access to athletic activities, and both

---

[3] Father's request for a civil warrant sought an order directed to law enforcement authorities to remove Children and return them to Father pending further orders of the court. The district court denied this request.

Mother and Father were looking into other schools for Children. She describes Children as being "very happy" in their current living situation.

*(7) The reasons of each person for seeking or opposing the relocation.*

Mother stated that she relocated with Children because of domestic violence perpetrated by Father. Father opposes the relocation because Children's living in Texas makes it impossible for him and his family to have daily physical contact with Children.

*(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.*

Father argues that it is presently unknown how Mother intends to support Children and "there is absolutely no testimony to indicate" where Mother was working, how much she was making, what hours she was working, what was her rate of pay, and/or her job duties." Although details of Mother's employment in Texas are scant, the testimony presented establishes that Mother worked full time while living in New Orleans and has worked since moving to Texas. She has provided for Children without any financial assistance from Father. The district court noted that "[t]here is no testimony or anything that shows that [Children] are [] without[.]"

*(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.*

Father has not provided any financial support for Children since they relocated to Texas.

*(10) The feasibility of a relocation by the objecting person.*

Father testified that he has owned his own construction company for fourteen years. No evidence was presented as to the feasibility of Father relocating his construction business to Texas.

*(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.*

Mother stated that Father smokes marijuana. Father's mother confirmed Father's marijuana use but added that "[h]e's always outside with it." Mother further stated that Father physically and emotionally abused her in the presence of Children. No evidence was presented relating to attempts made by Father to rehabilitate his drug use or abusive behavior.

*(12) Any other factors affecting the best interest of the child.*

We note that Mother's oldest daughter from a relationship prior to her relationship with Father is currently living with Mother and Children. Requiring Children to return to New Orleans would disrupt the close bond between Children and their half-sister should Mother elect to remain in Texas.

Based on our *de novo* analysis of the twelve factors listed in La. R.S. 9:355.14, we find no factors that would prevent relocation. After weighing the factors as a whole, we find that they weigh heavily in favor of allowing the relocation. Accordingly, we find that Mother has successfully borne her La. R.S. 9:355.14 burden of proving that the relocation is in the best interest of Children.

## CONCLUSION

Based on the foregoing, we affirm the district court's denial of Father's request for sole custody of Children and affirm the district court's decision approving the relocation of Children to Texas. We reverse the award of joint custody and the award of unsupervised visitation by Father and render judgment

18

awarding sole custody of children to Mother with all visitation by Father with Children to be supervised until such time that Father has satisfied all requirements of the Post-Separation Family Violence Relief Act.

**AFFIRMED IN PART, REVERSED IN PART, AND JUDGMENT RENDERED**