801 So.2d 1263 (2001)
Dena Diane James DUHON
v.
Dwayne Joseph DUHON.
No. 01-0731.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*1264 Daniel M. Landry, III, Lafayette, LA, Counsel for Defendant/Appellant Dwayne Joseph Duhon.
Richard D. Mere, Ltd., Lafayette, LA, Counsel for Plaintiff/Appellee Dena Diane James Duhon.
Court composed of ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, and GLENN B. GREMILLION, Judges.
THIBODEAUX, Judge.
Defendant, Dwayne Joseph Duhon, appeals a judgment of the trial court in favor of Dena Diane James Duhon, granting Dena sole custody of their minor children, Jessica and Denea Duhon, granting Dwayne supervised visitation in the presence of a third party approved by the court and the trial court's finding that Dwayne was a perpetrator of family violence under the Post-Separation Family Violence Relief Act. Further, Dwayne asserts that the trial court erred in failing to allow his present wife, Lisa Duhon, to be present in court during the custody hearing, and be excused from the rule of sequestration. Dwayne also contends that the trial court erred when it allowed a witness to testify even though she failed to comply with a subpoena duces tecum to produce documents at trial.
The standard of review on appeal of a trial court's custody decision is a clear showing of abuse of the trial court's discretion. Williams v. Bernstine, 626 So.2d 497 (La.App. 3 Cir.1993). Because we find no abuse of discretion and for the following reasons, we affirm.

I.

FACTS
Dena and Dwayne are the divorced parents of two minor children, Denea Duhon and Jessica Duhon. By prior judgment of the Fifteenth Judicial District Court, Dena was designated as the custodial parent for the children with Dwayne sharing custody *1265 as set forth in a custody implementation plan signed by Dena and Dwayne on July 15, 1996 and July 22, 1996. By judgment dated January 9, 1997, Dena was found in contempt of the custody implementation plan and was sentenced to serve a suspended jail term in the Acadia Parish Jail.
On December 8, 1997, Dwayne filed a motion for, among other things, sole custody of the two minor children. Prior to this motion seeking a permanent change of custody, Dwayne was granted the temporary sole custody of the children with Dena having supervised visitation by ex parte order dated September 18, 1997, to protect the children from Dena's violent acts. In response on January 7, 1998, Dena filed a motion requesting that the court order the family to undergo a mental health evaluation. A show cause hearing on both Dwayne and Dena's motions was set for January 23, 1998.
On January 23, 1998, the parties entered into a stipulated judgment that ordered that neither parent nor anyone supervising the children use corporal punishment as a form of discipline, that Dena pay child support to Dwayne, and that both parties pay one-half of the cost of any mental health therapist who sees the children. It was also ordered that Dena have supervised visitation with the children and reasonable access to the children by telephone. Dena's supervised visitation was to last until further order of the court. The judgment also ordered that the parties enter into co-parenting classes and mediation and dismissed all motions filed by Dena.
On April 20, 2000, Dena filed a petition requesting sole custody of the minor children pursuant to the Post-Separation Family Violence Act and an ex parte motion to remove the children to a safe environment based on alleged abuse suffered by Jessica. Pursuant to Dena's ex parte motion, she was granted temporary sole custody of both Denea and Jessica pending a full hearing on the matter. A hearing on the matter was scheduled and continued a number of times and finally held on October 31, 2000. At the conclusion of the hearing, the trial court granted a preliminary injunction prohibiting Dwayne from having any contact with Dena. The trial court further found that Dwayne was the perpetrator of family violence under the Post Separation Family Violence Relief Act and granted sole custody of the minor children to Dena. Dwayne was granted supervised visitation in the presence of a third party approved by the court. Dwayne's supervised visitation was to begin after he complied with the requirements of the Post-Separation Family Violence Relief Act. Additionally, the trial court granted an award for reimbursement of court costs and attorney's fees to counsel for Dena. It is from this judgment that Dwayne appeals.

II.

ISSUES
The issues are: (1) whether the trial court erred in failing to allow Lisa Duhon, Dwayne's present wife, to be present in the courtroom and excused from the rule of sequestration; (2) whether the trial court erred in allowing testimony of Dena's witness, Jane Hyde, LCSW, based upon her failure to comply with a subpoena duces tecum and trial subpoena for her records; and (3) whether the trial court erred in finding that the Post-Separation Family Violence Relief Act, La.R.S. 9:361, et seq. was applicable and in further awarding sole custody to Dena with supervised visitation to Dwayne.

III.

LAW AND DISCUSSION
Dwayne urges the trial court's decision to bar his present wife, Lisa Duhon, from *1266 the courtroom under a rule of sequestration is error. Dwayne claims that Lisa was a party to the action and, therefore, should not have been barred. The trial court concluded that she was not a party, but a witness and, therefore, subject to the rule of sequestration. We agree.
At the beginning of the October 2000 hearing, the trial court found that regardless of the fact that Lisa was named as a defendant in Dena's petition for sole custody, she was not a party in the custody dispute between Dena and her ex-husband Dwayne, the biological parents of the minor children involved in this custody matter. Louisiana Code Evidence Article 615 provides, in pertinent part, as follows:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
B. Exceptions. This Article does not authorize exclusion of any of the following:
(1) A party who is a natural person.
The trial court did not err in finding that Lisa was not a party to the custody dispute between Dwayne and Dena, and in excluding Lisa from the courtroom.
Dwayne next asserts that the trial court erred in allowing social worker, Jane Hyde, to testify because she failed to bring the documents pertaining to her sessions with Jessica, that he subpoenaed for the custody hearing. To support his position, Dwayne cites La.Code Civ.P. art. 1354 that provides as follows:
Subpoena duces tecum
A subpoena may order a person to appear and/or produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court in which the action is pending in its discretion may vacate or modify the subpoena if it is unreasonable or oppressive. Except when otherwise required by order of the court, certified copies, extracts, or photostatic copies may be produced in obedience to the subpoena duces tecum instead of the originals thereof. If the party requesting the subpoena does not specify that the named person shall be ordered to appear, the person may designate another person having knowledge of the contents of the books, papers, documents or other things to appear as his representative.
When the person subpoenaed is an adverse party, the party requesting the subpoena duces tecum may accompany his request with a written statement under oath as to what facts he believes the books, papers, documents, or tangible things will prove, and a copy of such statement must be attached to the subpoena. If the party subpoenaed fails to comply with the subpoena, the facts set forth in the written statement shall be taken as confessed, and in addition the party subpoenaed shall be subject to the penalties set forth in Article 1357.
A person, who without reasonable excuse, fails to comply with a subpoena, "may be adjudged in contempt of the court which issued the subpoena. The court may also order a recalcitrant witness to be attached and brought to court forthwith or on a designated day." La.Code Civ.P. art. 1357.
Ms. Hyde testified that she was prepared to bring the subpoenaed documents *1267 to the hearings that were originally scheduled for May and August of 2000. Those hearings were continued at Dwayne's request. She further testified that after the August hearing had been continued and re-scheduled for October 31, 2000, she put the documents back in her file due to the confidential nature of the information contained therein. She also testified that the documents were apparently misplaced because she was unable to locate them for the October 2000 hearing. The trial court noted Dwayne had time, due to the many continuances in the case, to acquire the documents by written discovery and deposition but failed to do so.
Under La.Code Civ.P. art. 1357, the penalties for failing to comply with a subpoena are applicable when that failure is committed "without reasonable excuse." The trial court found Ms. Hyde's excuse for failing to comply with the subpoena she misplaced the documents during the interim between the first scheduled custody hearing in April of 2000 and the actual hearing date of October 31, 2000 to be a reasonable excuse. We find no error in that conclusion.
Finally, Dwayne asserts that the trial court erred in finding that the Post-Separation Family Violence Relief Act was applicable to this custody case and in awarding Dena sole custody of their minor children, Jessica and Denea. Dwayne further argues that the trial court committed the error by relying heavily on the testimony of Ms. Hyde. Dena, on the other hand, argues that the trial court simply chose to believe the version of events presented by the testimony of Ladessa Plaisance, a representative of the Louisiana Department of Social Services who investigated the allegations of child abuse and Ms. Hyde, the children's therapist.
A court of appeal may not set aside a judge or jury's factual finding unless that finding is manifestly erroneous or clearly wrong. Stobart v. State Through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d 840.
Louisiana Revised Statutes 9:364 of the Post-Separation Family Violence Relief Act provides in pertinent part as follows:
Child custody; visitation
A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact *1268 that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
B. If the court finds that both parents have a history of perpetrating family violence, custody shall be awarded solely to the parent who is less likely to continue to perpetrate family violence. In such a case, the court shall mandate completion of a treatment program by the custodial parent. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court.
C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child's best interest.
It its written reasons for judgment, the trial court stated, "[t]he Court reached its conclusion based on the convincing testimony of Jane Hyde ... and Ledessa Plaisance." Ms. Plaisance testified that her investigation of the abuse allegations revealed that Jessica was made to sleep on a kindermat in an empty bedroom as punishment. Ms. Plaisance also testified that Dwayne's present wife, Lisa, made Jessica kneel in Lisa's beauty shop for forty-five minutes to an hour. Ms. Plaisance, from OCS, testified that Jessica was made to kneel three hours in the beauty shop, where Lisa works. Ms. Plaisance also testified that Jessica told her that her father had hit her in the face with a closed fist, Lisa had slapped her in the face, and her father had pushed her down the stairs, wanting her to take out the trash. Dwayne's testimony corroborates the testimony of Ms. Plaisance in that he admitted that he made Jessica sleep on a kindermat as punishment for stealing Lisa's makeup and lying about the incident. Dwayne stated that although he was working offshore at the time, he was aware of the punishment. When he returned from offshore, Dwayne testified that he made Jessica kneel because she still had not told the truth about stealing the makeup. Dwayne further stated that he authorized his wife, Lisa, to leave Jessica on her knees for as long as it took for her to tell the truth. Jessica was allowed breaks to use the bathroom and to get drinks, but was sent back on her knees. Lisa and Dwayne did not deny making Jessica sleep on the mat or kneel for long periods of time.
Ms. Hyde, who counseled Jessica consistently from April 2000 through October 2000, testified that through her counseling of Jessica, she learned that Jessica experienced verbal abuse from Lisa. Ms. Hyde described an incident where Lisa got mad at Jessica, shook her and called her "Dena, Jr." Ms. Hyde further testified that when she first met Jessica she looked like a "startled rabbit or ... somebody that ... was always on guard." Jessica told Ms. Hyde about being made to sleep on the mat and kneeling for long periods of time. Ms. Hyde testified that it was her opinion that Jessica was not exaggerating the abuse incidents she described. Ms. Hyde also testified that Jessica's startle response was very high. Jessica also told Ms. Hyde that she did not want to be with her stepmother and father. Ms. Hyde testified that early in therapy, Jessica was suicidal. She was diagnosed with suffering from post-traumatic stress disorder (PTSD) as well as attention deficit hyper-activity *1269 disorder (ADHD). Ms. Jane Hyde, the therapist, stated that Lisa shook Jessica and put her on her knees on rice for an hour and a half at a time. Ms. Hyde also testified that this "child has been physically beat about the head and is being forced to sleep on a `kinder mat' in a bedroom that is being remodeled until she can be a member of the family." However, it appears that Jessica's suicidal tendencies and PTSD have improved since being away from her father.
It appears from the trial court's written reasons for judgment that he found that the two incidences, making Jessica sleep on a kindermat in an empty room and making her kneel for at least an hour, fit within the definition "more than one incident of family violence" under La.R.S. 9:364. Dwayne did not deny that these things happened, but, testified that he felt the punishments were justified. The trial court found otherwise and we find no manifest error in its conclusion that the Post-Separation Family Violence Act is applicable to this custody matter and in its award of sole custody to Dena in accordance with the Act's provisions.

IV.

CONCLUSION
Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Defendant Appellant, Dwayne Joseph Duhon.
AFFIRMED.