# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1529


JENNY SLAYTON

VERSUS

BILLY G. SLAYTON, JR.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 202,625
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**


W. Jay Luneau
Luneau Law Office
1239 Jackson Street
Alexandria, LA   71301
(318) 767-1161
COUNSEL FOR PLAINTIFF/APPELLANT:
  Jenny Slayton

Ruby N. Freeman
Assistant District Attorney
Post Office Box 1472
Alexandria, LA   71309
(318) 442-9200
COUNSEL FOR THIRD PARTY APPELLEE:
  State of Louisiana, Department of Social Services

**Billy G. Slayton, Jr.**
**237 Shenandoah Trace**
**Zwolle, LA   71486**
**(318) 645-6045**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Billy G. Slayton, Jr.**

AMY, Judge.

The defendant allegedly physically abused the plaintiff, his ex-wife, and his minor son. When the plaintiff prevented him from seeing his two children, the defendant filed a petition for visitation. A hearing was held, in which the trial court confirmed the couple's joint custody arrangement, naming the plaintiff as the domiciliary parent. The defendant was granted visitation every other weekend, alternating weeks during the summer, and pre and post holiday visits. The plaintiff appeals, asserting two assignments of error. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiff, Jenny Slayton Normand, and the defendant, Billy G. Slayton, Jr., dated for approximately eight years and had two children, Stayce and Steven. The record indicates that they married in 2000, separated nine months later, and divorced in 2001. The parties entered into a consent judgment in which they shared joint custody of the children and Billy was entitled to exercise reasonable visitation. According to Billy, "[t]he word reasonable was put in there due to the fact I worked shut-downs. I had no set schedule that I could lock in with my children." Billy testified that for two years, he usually was able to see the children anytime he called their mother. However, his visitation was terminated, according to Billy, when his fiance's sister alleged that he abused his fiance's children and her nephew.[1]

Billy filed a petition for visitation in June 2004, alleging that Jenny had "refused to allow [him] to visit with the children due to his past arrearage in monthly child support payments."[2] A hearing was held on October 25, 2004, in which the trial

---

[1] Billy testified that an investigation ensued, and the case was subsequently closed.

[2] We note that prior to the filing of Billy's petition for visitation, Jenny applied for child support enforcement services with the State of Louisiana, Department of Social Services. The Department of Social Services filed an *ex parte* motion and order for Billy to make all of his child support payments, including arrearage, payable to it pursuant to La.R.S. 46:236.2(C).

court ordered Billy to submit to a mental health evaluation to determine if he should be granted visitation with the children. In the interim, the trial court granted Billy visitation every other Saturday from nine in the morning to six in the evening.

Billy testified that he "went to two different mental evaluations and to an anger management counselor." He stated that he did not know why the trial court had ordered the mental evaluation as he is not "crazy." He also denied that he had an anger problem. When asked if any good came out of it, Billy replied: "I thought it was doing me good with the Court."

Billy testified that during the Fourth of July weekend, his family was coming into town, and he asked Jenny if the children could stay with him longer. Jenny refused. Billy did not return the children Saturday evening; he kept them until Monday. He testified that he knew it was wrong, explaining that: "[I]t's hard when your kids want to, you know, cry and ask to stay every time . . . You know, and I had been waiting and waiting, and I was very frustrated."

A hearing was held on the petition for visitation on July 18, 2005. Witnesses testified to Billy's relationship with Jenny as well as his relationship with his son, Steven. It was alleged that Billy physically abused both Jenny and Steven and that this abuse adversely affected Steven in terms of his psychological well-being. The trial court, after examining all of the evidence, continued the parties' joint custody of the children. Jenny was named the domiciliary parent. The trial court further ruled:

> Mr. Slayton be allowed visitation from 5:00 o'clock p.m. on Friday until 6:00 o'clock p.m. on Sunday; that there be pre and post holidays according to the Rapides Parish schedules and that beginning with next summer that both parents alternate weeks during the summer, one week to be spent with Mr. Slayton, the following week to be spent with Ms. Normand, and this will begin one week after school lets out, and that will begin next summer. Mother's Day will be spent with Ms. Normand and Father's Day will be spent with Mr. Slayton.

It is from this judgment that Jenny appeals. She designates the following as error:

1.  The Trial Court correctly found that there was anger (more correctly family violence) directed toward Appellant, but still granted overnight unsupervised visitation to Appellee without a showing by a mental health care provider that Appellee was not a threat to the minor children.

2.  The Trial Court committed error finding that there was no anger directed toward the minor children by Appellee and therefore, Appellee should not be allowed unsupervised overnight visitation.

**Discussion**

*Family Violence*

Jenny argues that in its reasons for ruling, the trial court found that there was anger or family violence directed toward her. Thus, she contends that pursuant to the Post-Separation Family Violence Relief Act, the trial court erred in granting overnight unsupervised visitation to Billy without a showing by a mental health care provider that he was not a threat to the minor children. Furthermore, she asserts that a mental health professional presented uncontradicted testimony that "Steven had been the victim of family violence and was fearful of his father." Jenny contends, therefore, that the trial court erred in finding that there was no anger directed toward the minor children by Billy and in allowing Billy unsupervised overnight visitation.

The Post-Separation Family Violence Relief Act is found in La.R.S. 9:361, *et seq.* "From a review of the Act as well as the case law, the apparent legislative intent in creating the Act was to protect victimized parties when domestic disputes arise in the course of separation and divorce." *State ex rel. S.D.K.*, 04-218, p. 5 (La.App. 5 Cir. 5/26/04), 875 So.2d 887, 890-91. Louisiana Revised Statutes 9:364(C) "was specifically designed to protect the child's interest by restricting the right of visitation

3

of the abusing spouse in families with a history of family violence." *Michelli v. Michelli*, 93-2128, p. 5 (La.App. 1 Cir. 1/5/95), 655 So.2d 1342, 1346.

Louisiana Revised Statutes 9:364 provides in pertinent part:

> A.   There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children.  The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.  The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children.  The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
>
> . . . .
>
> C.  If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program.  Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and pyschoactive drugs, and poses no danger to the child, and that such visitation is in the child's best interest.

Louisiana Revised Statutes 9:362(3) defines family violence:

> "Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children.

In its reasons for ruling, the trial court stated:

> The Court, after taking into consideration the testimony of all of the parties, arguments of counsel, taking into consideration the entire suit record, this Court has heard no testimony as to any anger by Mr. Slayton against the children in question.  All anger and anger related issues have been directed toward his ex-spouse.  Even the boat paddling incident, if you call it a paddling, shows no intent to hurt or harm the child in any

way, but it did in fact show a lack of good judgment. I, in fact, was waiting for any testimony that showed that Mr. Slayton has any ill will or ill feelings toward the children in question. The Court does take into consideration the fact that being a parent means more than just seeing his or her child once or twice a month. The Court takes into consideration the fact that Mr. Slayton did in fact withhold these children a day longer than what he should have, or even two days. The Court also takes into consideration that the children were held from Mr. Slayton for a period in excess of two and one half to three years. There's one more --- the Court did note that Mr. and Mrs. Slayton lived together or [sic] seven or eight years and that the marriage itself lasted nine and one half months. Throughout this stormy relationship it appears that both parents contributed to the anxiety of the children involved and, after hearing the testimony of the parties, the Court finds it to be in the best interest of the minor children that they in fact develop a relationship with their father.

The trial court's custody decision will not be overturned on appeal absent an abuse of discretion. *Duhon v. Duhon*, 01-731 (La.App. 3 Cir. 12/12/01), 801 So.2d 1263. At trial, Jenny alleged that Billy physically abused her before and during their marriage. When asked how Billy was physically violent towards her, Jenny responded: "There were times that he'd choked me up against the wall. There were times that he'd push me. He's pulled my hair." She also testified that on one particular occasion they were arguing over a phone line, and she "got the brush in [her] --- it was [her] left eye." We note that Jenny's mother and sister-in-law testified that they witnessed Billy grabbing Jenny by the head and pushing her.[3]

According to Jenny and her sister-in-law, Diana Gross, Billy also physically abused their son, Steven. Mrs. Gross testified that she saw Billy whipping Steven with a belt and that she thought Billy was "rough." Jenny testified that in 2002, she noticed a bruise on Steven's leg, and he stated that Billy had whipped him with a leather strap. She explained that because of this incident, she stopped Billy's visitation with the children. Jenny also described an incident that happened a few

---

[3] Billy testified that never abused Jenny in any way.

5

weeks before the visitation hearing. Steven told Jenny that Billy hit him on the "butt" with a boat paddle because he did not get into the boat when Billy told him to do so.[4] Nevertheless, when asked under what circumstances would she feel comfortable with the children having overnight visitation with Billy, Jenny answered: "Well, if he would get help with his anger I guess that would be a fact ---- I mean, like I said before, I don't want to keep them from him. I just want him to get help with his anger."

Jenny sought help for Steven because he had behavioral problems. Steven was referred to Northside Mental Health, where he met with Dr. Phillip Rowden, a child psychiatrist. Elizabeth Babcock, a mental health professional at Northside, worked under Dr. Rowden's supervision and was also assigned to Steven's case. Ms. Babcock testified that Steven was diagnosed as being bipolar and having Attention Deficit Hyper Activity Disorder (ADHD) and Post-Traumatic Stress Disorder (PTSD). According to Ms. Babcock, Steven was diagnosed with PTSD because he witnessed abuse "from his mom and his dad, domestic violence, and then also from his abuse from being whipped." She testified that Steven informed her that Billy whipped him with a leather horse strap. She further testified that Steven stated that Billy "hit" him with a boat paddle, and "[i]t scared him because his dad struck him with an object."

Ms. Babcock was aware of the fact that Jenny and/or Steven's stepfather had gotten angry at Steven and whipped him, or as she puts it "spanked" him. We note that Jenny admitted to using a paint stick to discipline the children. On cross-examination, defense counsel pointed out that Ms. Babcock previously testified that she did not believe a boat paddle was a proper tool to use to spank a child. When

---

[4] We note that not only did Billy deny hitting Steven with a boat paddle, he also denied whipping Steven with a leather strap.

6

asked about the comparative use of a paint stick, she responded: "I think that just the thickness of a boat paddle is totally different from a paint stirrer [sic]." She also stated that the amount of force used should be taken into consideration. Ms. Babcock acknowledged that Steven did not state that Billy used a lot of force when hitting him with the boat paddle. Rather Steven "just said that his dad hit with the boat paddle and it scared him."

Ms. Babcock testified that Steven likes going to Billy's house and enjoys himself when he is there. However, she stated that Steven told her that he does not feel safe at his dad's house. She explained: "[A] constant thing that Steven and I are working on right now is a fear that he has. He doesn't know why he's scared. It's just a fear that he has." Ms. Babcock agreed with plaintiff counsel's assertion that people with PTSD sometimes convince themselves that they are not safe when, in fact, they are. Ms. Babcock opined that if Billy were to go to counseling and Steven was aware of it, he would feel more safe around Billy and presumably would be comfortable with having overnight visitation with him.

Ms. Babcock admitted that it was her opinion, and not Dr. Rowden's, that Steven should not have overnight visitation with Billy. She testified that Dr. Rowden stated that "a child should know both parents and both parents should be involved in the child's life."

After reviewing the testimony and evidence before it, the trial court found that Billy did not direct any "anger" towards the children. Rather the trial court determined that "[a]ll anger and anger related issues have been directed toward his ex-spouse." Jenny argues that "considering the testimony adduced[,] this finding was one of family violence" and that pursuant to La.R.S. 9:364(C), the trial court erred in

7

allowing visitation. In *Michelli*, 655 So.2d 1342 at 1346, the court held that "in order for [La.R.S. 9:364(C)] to become operative, two things must occur. First, the court must find that there is family violence, and second, there must be a history of the family violence."

In the matter before us, the trial court made no finding under the statute as it did not specifically find that Billy physically abused Jenny and/or Steven or that Billy had a history of perpetrating family violence. We note that the "trial court is not bound by expert testimony and remains free to accept or reject an expert's conclusions." *Taylor v. State, Dep't of Transp.*, 03-219, p. 15 (La.App. 3 Cir. 6/23/04), 879 So.2d 307, 318, *writ denied*, 04-1887 (La. 10/29/04), 885 So.2d 595. The trial court was not required to accept Ms. Babcock's testimony concerning the basis for Steven's PTSD or her conclusion that Steven should not have overnight visitation with Billy.

Furthermore, the trial court was free to make credibility determinations related to the occurrence of alleged events. *Id*. Insofar as the trial court only found "anger" directed towards Jenny, we conclude that this is insufficient to invoke the applicability of the Post-Separation Family Violence Relief Act. We find no abuse of discretion in the trial court's determination that it would be in the best interest of the children to develop a relationship with their father. Accordingly, the award of joint custody naming Jenny as the domiciliary parent and granting visitation to Billy as provided by the trial court is affirmed.

**DECREE**

For the above reasons, the judgment of the trial court is affirmed. All costs of these proceedings are assessed against the plaintiff, Jenny Slayton Normand.

**AFFIRMED.**