GASKINS, J.
 

 | xSandra Schmutz Smith (Sandra) appeals from a trial court judgment changing the domiciliary custody of her minor child to the father, Steven Randal Smith (Steve), denying Sandra’s request to relocate with the child to Indiana, and denying her request for child support for the parties’ emancipated daughter. For the following reasons, we affirm the trial court judgment.
 

 FACTS
 

 Sandra and Steve were married on December 28, 1985. Steve is employed with the United States Air Force; their last matrimonial domicile was Bossier City, Louisiana. Three children were born of the marriage: a son, Brian Joseph (DOB 7/25/89); a daughter, Angela Marie (DOB 8/22/91); and a daughter, Samantha Victoria (DOB 8/20/98). The parties separated on March 31, 2007. On April 16, 2007, Sandra filed for divorce under La. C.C. art. 102.
 

 On June 28, 2007, in a stipulated judgment, Sandra and Steve were awarded joint custody of their children, with Sandra named the domiciliary parent. No visitation plan was set forth. Brian reached the age of majority early in the proceedings; there are no issues in this matter concerning custody or child support for him. Steve was ordered to pay $1,666 in child support for his daughters, as well as his proportional share of the uncovered medical and dental expenses for Angela and Samantha. Steve was also ordered to pay interim spousal support.
 

 On January 10, 2008, Sandra filed a motion for contempt and for modification of visitation. She claimed that Steve failed to pay interim ^spousal support and his portion of the uncovered medical and dental expenses for Samantha. Sandra also claimed that Steve exercised his visitation sporadically; she asked for a visitation plan to be established.
 

 On April 18, 2008, Steve filed a recoven-tional demand asking for a divorce under La. C.C. art. 103(1), claiming that the parties separated on March 31, 2007, and had lived separate and apart for one year.
 

 On May 14, 2008, Sandra filed an answer to the reconventional demand seeking to modify custody and to assert a claim under the Post-Separation Family Violence Relief Act (PSFVRA) found in La. R.S. 9:361
 
 et seq.
 
 Sandra claimed that at a birthday party for Brian on August 1, 2007, an argument erupted and Steve slapped Sandra. Sandra asserted that in March 2007, Steve mistreated Angela while she was doing her homework. She claimed that, over a period of time, the police were called to her house 13 times for domestic disturbances. Sandra asked for sole cus
 
 *647
 
 tody and final spousal support as well as a temporary restraining order (TRO). On May 19, 2008, a TRO was issued against Steve.
 

 On May 7, 2008, Steve filed a petition for protection from domestic abuse against Sandra claiming that she slapped and shoved him, threatened his life, spat at him and threw objects at him. On May 20, 2008, Steve moved to have his petition for a protective order dismissed. The court dismissed his petition without prejudice on that day. On May 22, 2008, Steve filed a motion to have his suit and Sandra’s consolidated in the trial court.
 

 Steve alleged that on May 21, 2008, Sandra sent a fax and a letter to him, stating that she desired to relocate her residence and that of the minor [^children to Indiana. Steve filed an opposition to the proposed relocation of the children. He asked to be appointed domiciliary parent and sought the appointment of a mental health professional to evaluate the parties and the children. Apparently at some stage of the proceedings, the parties agreed to emancipate Angela, who moved to Indiana to live with an aunt and uncle.
 

 On May 29, 2008, Steve filed a petition for contempt, change of custody, denial of final spousal support, and protection from abuse. Steve outlined the number of times he had been physically attacked by Sandra. He stated that she repeatedly asked him to discipline the children and when he attempted to do so, she attacked him and called the police. He alleged that she frequently e-mailed him with threatening and harassing messages. He asserted that she once came to his house at night when he had visitation with Samantha, beat upon the door and demanded the return of the child. Sandra then called the police. Steve stated that Sandra kept a filthy house that was a health hazard and sought to have her pay rent for living in the house. He also argued that she is employed and should not be awarded final spousal support.
 

 On June 19, 2008, a judgment of divorce was entered. On June 26, 2008, the court appointed a mental health professional, Shelley Booker, to evaluate the parties and the children, dismissed all TROs, and ordered that the physical custody of the children be shared.
 

 On September 15, 2008, Sandra filed a petition for a preliminary injunction, contempt, and attorney fees. She alleged that on August 22, 2008, Steve coerced Samantha to let him into the house. He took pictures of |4a31 the rooms and gave them to Ms. Booker. The pictures depicted a dirty, poorly kept house. One picture shows what appears to be animal feces on the floor of one of the rooms. Sandra claimed that entering the house and taking the pictures violated her right to the exclusive use and occupancy of the house. She sought a preliminary injunction prohibiting Steve from coming into the house. Sandra claimed that she filed a police report and asked for attorney fees for filing this petition.
 

 The issues raised by the parties were heard by the trial court on November 7, 24, and 26, 2008. Following the hearing, the trial court issued written findings of fact and reasons for judgment. The court first outlined the parties’ issues. Sandra wanted sole custody under the PSFVRA, permission to relocate to Indiana with Samantha, relief for violation of a preliminary injunction when Steve took pictures of the inside of her house, child support for Samantha and the emancipated minor, and final spousal support. Steve sought an injunction against Sandra under the PSFVRA, a finding of contempt of court for Sandra’s refusal of reasonable visitation, denial of final spousal support due to Sandra’s fault in the breakup of the mar
 
 *648
 
 riage, and rent for the community residence. He also sought to be named domiciliary parent, to receive child support, and to prohibit Sandra’s relocation with Samantha.
 

 The trial court found that Sandra specifically waived her claim to final spousal support in a prior agreement in which Steve was obligated to pay her interim spousal support until 180 days after the divorce. The claim for rent was satisfied in a prior judgment whereby both parties waived Rclaims for rent or reimbursement for payment of the monthly moi’tgage on community property.
 

 The trial court determined that there had been no family violence as defined by the jurisprudence under the PSFVRA. The court found that both parties were guilty in causing arguments. The court noted that Sandra has longstanding chronic depression and has taken multiple medications for many years. According to the court, she has mental instability as would lend itself to domestic turbulence. The court found that the birthday party incident on August 1, 2007, was the only act of violence against Sandra. The slap was minimal and was done in self-defense. The court found that Steve was the more credible witness. The court stated that, even though the police were called, they did not make any pictures of Sandra’s face after the slap because there were no marks. When Sandra sought medical attention, no marks were found. The court found that a single act of violence that did not cause serious injury was insufficient to meet the requirements for the PSFVRA.
 

 The court found that Sandra’s behavior is indicative of a depressive disorder and mental instability. The parties were ordered to communicate only by e-mail and to refrain from stalking each other. The court determined that there was insufficient evidence to find either party in contempt.
 

 The court concluded that, when Steve entered the house and took the pictures of the house, Sandra left the doors unlocked for him to retrieve the child’s bag for visitation. It was reasonable to expect that he would take | ¿pictures of the poor condition of the house. In examining the pictures, the court determined that they were indicative of a chronic depressive disorder and mental instability which cannot be a healthy or safe environment for a child.
 

 The trial court rejected the recommendations of Ms. Booker, who suggested that Sandra be allowed to relocate to Indiana with Samantha. According to the court, the bases for her conclusions were erroneous or misplaced.
 

 In rejecting Sandra’s request to relocate, the court noted that the maternal grandparents live in Tennessee and the paternal grandparents are in Texas and Ohio, rather than in Indiana as argued by Sandra. Sandra had also asserted that Steve could relocate to another Air Force base near Indiana. The court found that this was incorrect; he works with B-52s and there is no base handling that type of aircraft in the Indiana area.
 

 In determining child custody, the court considered the factors enumerated in La. C.C. art. 134 and concluded that it was in the best interest of the child to name Steve as domiciliary parent of Samantha with visitation granted to Sandra. A joint custody implementation plan was instituted. Sandra was ordered to pay child support in the amount of $260.82 per month and to pay 16.29 percent of the uncovered medical and dental expenses for Samantha. The court found that no child support was due for the emancipated minor daughter, Angela.
 

 
 *649
 
 On December 18, 2008, the trial court signed and filed a judgment incorporating its findings of fact. On December 30, 2008, Sandra filed a |7motion for new trial, alleging that the judgment was contrary to law and evidence. She claimed that she was denied a fair trial because the trial judge hurried the hearing and totally ignored the opinion of Ms. Booker, the mental health professional appointed by the court. Sandra pointed out that the evidence showed two instances in which Steve committed violent acts; therefore, she claimed that she had established a history of family violence under the PSFVRA. She also claimed that the house was messy during their marriage and the conditions depicted in the pictures were not a change in circumstances justifying a change of domiciliary parent.
 

 The trial of this matter was heard and decided by Judge Dewey E. Burchett, Jr. The motion for new trial was heard and denied on February 2, 2009, by Judge Michael O. Craig, the successor to Judge Burchett’s position. Judge Craig stated that he did not see anything legally wrong with the way Judge Burchett rendered his decision. Judge Burchett outlined all the factors under La. C.C. art. 134 concerning child custody in making his decision. Judge Craig noted that it was within the trial court’s discretion to reject the mental health evaluator’s opinion. Judge Craig observed that this matter was tried over three days and he did not find that Sandra was denied sufficient time to present her case.
 

 Regarding the PSFVRA,' Judge Craig observed that Judge Burchett’s findings of fact extensively set forth the reasons why he did not find a history of family violence in this matter. Judge Craig stated that he did not find that this matter fell under one of the peremptory grounds of La. C.C. art. 1972 for new trial. He did not find that the judgment was contrary to | ¿the law and the evidence or that there was any new evidence not presented at trial. Based upon those reasons, the motion for new trial was denied. Sandra appealed.
 

 POST-SEPARATION FAMILY VIOLENCE RELIEF ACT
 

 Sandra argues that the trial court committed legal error in failing to apply the PSFVRA, found in La. R.S. 9:361
 
 et seq.,
 
 and therefore this court should make a
 
 de novo
 
 review of the record. Sandra insists that she proved several very specific instances of domestic abuse and that her medical records show that much of her depression was the result of domestic violence during the marriage.
 

 Legal Principles
 

 A trial court’s determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion.
 
 Bordelon v. Bordelon,
 
 390 So.2d 1325 (La.1980);
 
 Lewis v. Lewis,
 
 34,031 (La.App. 2d Cir.11/3/00), 771 So.2d 856. The trial judge, having observed the witnesses, is in the best position to determine credibility.
 
 Lewis v. Lewis, supra; Luplow v. Luplow,
 
 41,021 (La.App. 2d Cir.2/28/06), 924 So.2d 1135.
 

 Regarding child custody, visitation, and family violence, the PSFVRA specifies in La. R.S. 9:364(A):
 

 A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating par
 
 *650
 
 ent has successfully ^completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent’s participation as a custodial parent because of the other parent’s absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
 

 The PSFVRA defines “family violence” to include physical and sexual abuse and any offense against the person as defined by the Louisiana Criminal Code, excluding negligent injury and defamation, committed by one parent against another parent or against any of the children. La. R.S. 9:362(3). In deciding whether a parent has a “history of perpetuating family violence,” the trial court should look at the entire chronicle of the family, remaining mindful that the paramount goal of the legislation is the children’s best interest. Such factors as the number, frequency, and severity of incidents will be relevant, as well as whether the violence occurred in the presence of the children, and to what extent there existed provocation for any violent act. Stated differently, the determination must be based on a review of the total circumstances of the family, and necessarily involves a weighing of the evidence.
 
 Simmons v. Simmons,
 
 26,414 (La.App. 2d Cir.1/25/95), 649 So.2d 799;
 
 Lewis v. Lewis, supra.
 

 Discussion
 

 The record shows that these parties have had a long, contentious relationship. Two specific instances were put forth at trial by Sandra to prove that Steve had a history of family violence and should not have | indomiciliary custody of Samantha. The first incident involved disciplining Angela and the second concerned slapping Sandra.
 

 Angela testified that in March 2007, she was at home alone and received a call from Steve. He was upset because she had been dating an older boy and had posted inappropriate comments on the internet. Angela hung up on Steve. He came to the house, grabbed her by her hair in pushing her to the couch, and then spanked her with a belt. Angela stated that Steve had been drinking. The police were called and Steve was arrested.
 

 Sandra testified that on the date of that incident in March 2007, she and Steve had been at a wedding. She stated that he had about six drinks. He then went back to the house and confronted Angela. Angela began yelling at Steve and he pulled her hair and hit her with a belt.
 

 Regarding the incident, Brian testified that Angela was disrespectful and misbehaved, causing Steve to spank her with a belt. Steve testified that he was not intoxicated during the incident with Angela. He claimed that he took several of the drinks observed by Sandra to other wedding guests.
 

 Officer April Hylbert of the Bossier City Police Department responded to the domestic violence call concerning Angela. The officer removed a clump of hair that had been pulled from Angela’s head and filed it into evidence. She also observed a welt on Angela’s hand.
 

 In August 2007 when Steve slapped Sandra, she said that she got into an argument with him over criticism by his family of her child rearing practices. She stated that if they did not approve of how she was raising the children, they should not see the children at Thanksgiving and Christmas. InShe claimed that Steve kept pointing his
 
 *651
 
 finger in her face and she brushed his hand away. She claimed that he hit her in the side of the face and knocked her to the ground. She sought medical attention the next day because her mouth hurt. The physician who saw her, Dr. William Mar-anto, found no objective evidence that Sandra had been slapped.
 

 Giving his account of the incident, Steve testified that the family went out to dinner for Brian’s birthday and returned to the house to open presents. During the course of their conversation, Sandra threatened that he would never see the children again. He stated that she kept pushing and shoving him and hitting him. He slapped her in self-defense. He denied knocking her to the ground. When he tried to leave, Sandra followed him outside, beat on his car and bent the antenna. Sandra admitted this behavior.
 

 Officer Stephen Boothe of the Bossier City Police Department responded to the domestic disturbance call. He observed that Sandra had a slightly swollen left cheek and a slight red hand print on her left cheek. Officer Boothe did not photograph Sandra’s face because the signs of the slap would not show up in a photograph.
 

 Brian and Angela testified that they had seen their parents in physical altercations before and that Sandra frequently struck Steve. Angela often e-mailed Steve regarding erratic behavior by Sandra, which included throwing things at Angela and cursing. At one point, Angela stated that her mother was scaring her.
 

 [12On one occasion, Sandra called the police and reported that Steve was driving while intoxicated when he had physical custody of Samantha. The police officer who answered the call went to a restaurant where Steve was eating with the child and other friends. The officer testified that Steve was not intoxicated. Steve stated that when he left the restaurant, Sandra was parked outside.
 

 Sandra, who suffers from depression, threatened to commit suicide twice in two days in July 2008. On one of those occasions, Steve called 911 because Sandra said that she had taken a bottle of pills. Emergency personnel determined that Sandra had not taken an overdose.
 

 There was also testimony that Sandra hit Steve and threw keys at him. The record shows that while Steve was exercising visitation with the children, Sandra went to his residence, beat upon his door, and caused a disturbance which resulted in the police being called.
 

 There was testimony that Steve had engaged in fist fights with Brian. However, there was also testimony that Brian had thrown punches at his father and Steve responded.
 

 In this matter, there is evidence that each party provoked verbal and sometimes physical altercations with the other. However, we do not find that the trial court was manifestly erroneous in finding that there was no showing of a history of family violence by Steve requiring the application of the PSFVRA. The PSFVRA provides that the court
 
 may
 
 find a history of perpetuating family violence if the court determines that one incident of family violence has resulted in serious bodily injury or if there is more than 11sone incident of family violence. In this matter, no serious bodily injury has occurred.
 
 [1]
 
 Also, with
 
 *652
 
 regard to the incident involving Angela, Steve received counseling and completed an anger management program. Because Steve participated in these programs, Ms. Booker, who performed mental health evaluations in this case, did not recommend awarding sole custody to Sandra under the PSFVRA.
 

 As to the incident involving Sandra, the evidence shows that there was provocation by her. We also note that the application of the PSFVRA on the basis of a history of family violence would preclude an award of sole or joint custody to the parent with that history. In her brief, Sandra no longer seeks sole custody of Samantha, but asks to be restored as the domiciliary parent. Considering the total circumstances of this family and a weighing of the evidence, we do not find that the trial court was manifestly erroneous or committed legal error in failing to apply the PSFVRA in this matter.
 

 TRIAL COURT’S CONCLUSIONS REGARDING DEPRESSION
 

 Sandra argues that the trial court made two factually inappropriate and legally improper conclusions concerning her depression and erred in using those conclusions as the basis for its decision to modify custody. Sandra claims that the trial court erred in finding that the evidence of her longstanding chronic depression and multiple medications over many years 114is indicative of such mental instability as to lend itself to domestic turbulence. She also urges that the trial court erred in concluding that the condition of her home was indicative of a chronic depressive disorder and mental instability and was not a healthy or safe environment for Samantha. These arguments are without merit.
 

 Discussion
 

 Sandra argues that the trial court improperly made a medical conclusion regarding the connection between her depression and medications for that condition and the turbulence in her relationship with Steve. She contends that this conclusion could not properly be made by a lay person, but rather required testimony from a medical expert, which was not present in this matter. In support of this argument, she cites jurisprudence from medical malpractice cases requiring expert medical testimony to link medical treatment with injury.
 

 We do not find that the medical malpractice cases cited by Sandra are disposi-tive in this matter. We also observe that evidentiary rules are somewhat relaxed in child custody matters. See La. C.E. art. 1101(B)(2). The record contains Sandra’s medical records and lay testimony which show that she has suffered from depression and attention deficit hyperactivity disorder (ADHD) for many years. Steve testified that the parties began marriage counseling in the 1990s and that Sandra began taking medication for depression at that time. Her medications include Zoloft for depression, Vynase for ADHD, and Trazodone for a sleep disorder. She also testified that she occasionally uses Xanax.
 

 | i.^Child custody issues are based upon the best interest of the child. One factor to be considered is the mental and physical health of each party. La. C.C. art. 134(7). Evidence of her longstanding depression, use of medication, erratic behavior, which included threats of suicide, along with a poorly kept house, provided a sufficient basis for the trial court to make a commonsense conclusion that Sandra’
 
 *653
 
 mental health issues had an effect on the problems in the marriage and affected to her ability to serve as domiciliary parent. No medical expert testimony is required to make this conclusion based upon the evidence and testimony presented here. The trial court’s finding was not clearly wrong or manifestly erroneous.
 

 RELOCATION FACTORS AND RECOMMENDATION OF MENTAL HEALTH CARE PROFESSIONAL
 

 Sandra urges that the trial court committed prejudicial legal error in failing to consider the elements of La. R.S. 9:355.12 in assessing the relocation of the child. In rejecting her request to relocate, the trial court did not mention these factors, but instead stated that it rejected the opinion of the court-appointed mental health care professional on this issue. Sandra argues that the mental health care professional considered the appropriate factors, but the trial court rejected that opinion without a valid basis.
 

 In considering certain of the factors under La. R.S. 9:355.12, Sandra maintains that she has been primarily responsible for rearing the children and that she fostered a plan of visitation for Steve. If she were allowed to relocate to Indiana, she would have a job there and her daughter, Angela, as well as other family members already live there. She argues that Steve 11Bcould relocate to be closer to the family. These arguments are without merit.
 

 Legal Principles
 

 It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence.
 
 Raney v. Wren,
 
 1998-0869 (La.App. 1st Cir.11/6/98), 722 So.2d 54. After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the experts’ professional qualifications and experience and the factors upon which the opinions are based.
 
 Derbigny v. Derbigny,
 
 34,672 (La.App. 2d Cir.4/6/01), 785 So.2d 989;
 
 Cain v. Cain,
 
 39,903 (La.App. 2d Cir.5/11/05), 903 So.2d 590,
 
 writ denied,
 
 2005-1517 (La.6/15/05), 904 So.2d 679,
 
 cert. denied,
 
 546 U.S. 978, 126 S.Ct. 563, 163 L.Ed.2d 462 (2005).
 

 Further, a trial judge may substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole.
 
 Goodwin v. Goodwin,
 
 618 So.2d 579 (La.App. 2d Cir.1993),
 
 writ denied,
 
 623 So.2d 1340 (La.1993);
 
 Raney v. Wren, supra.
 

 The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child’s best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life. La. R.S. 9:355.13.
 

 117La. R.S. 9:355.12 requires the court to consider certain enumerated factors.
 
 [2]
 
 See
 
 *654
 

 Curole v. Curole,
 
 2002-1891 (La.10/15/2002), 828 So.2d 1094. Although the statute mandates that all of the factors be considered by the court, it does not dictate preferential consideration of certain factors.
 
 Curole v. Curole, supra; Johnson v. Spurlock,
 
 07-949 (La.App. 5th Cir.5/27/08), 986 So.2d 724,
 
 writ denied,
 
 2008-1400 (La.7/25/08), 986 So.2d 670.
 

 A court commits legal error when it fails to consider the factors for relocation and instead completes an evaluation of the best interest of the child under La. C.C. art. 134. Such error requires a
 
 de novo
 
 review of the appropriate factors. See
 
 Johnson v. Spurlock, supra.
 

 Discussion
 

 In the present ease, the trial court did not consider the factors under La. R.S. 9:355.12 in denying the request by Sandra to relocate with Samantha. Rather, the trial court applied the factors for evaluation of the best interest of the child under La. C.C. art. 134. Because this constitutes legal error, we must make a
 
 de novo
 
 re-view and analyze the factors under La. R.S. 9:355.12.
 

 The record shows that the child has a good relationship with both parents. Each spends a significant amount of time with the child. The father’s family lives in Texas and the maternal grandparents reside in Tennessee. The mother’s sister and her husband live in Indiana and, as discussed earlier, Angela now lives in that state with them. The child’s adult brother indicated an intent to remain in Louisiana. There is no showing that the child would have greater support from family in Indiana than in Louisiana.
 

 The child is 10 years old and has lived most of her life in Louisiana. Given her young age, there is no showing that the relocation would have a | ^significant negative impact, but there is no showing of a particularly positive impact either.
 

 Given the distance between Louisiana and Indiana, the relocation would not preserve a good relationship with the nonrelo-cating father due to the difficulties in arranging suitable visitation.
 

 
 *655
 
 The child verbalized a desire not to be involved in the proceeding. She stated that she enjoys her current school, but was interested in relocating to Indiana.
 

 The record shows that the mother, who is seeking relocation, has attempted to thwart the relationship between the father and the child by interfering with his visitation. She has appeared unannounced at his residence, caused disturbances, and called the police. On one occasion, the mother called the police and reported that the father was driving while intoxicated during visitation with the child. The police officer who responded to the call determined that this allegation was untrue.
 

 The mother claims that she can obtain employment in Indiana. However, the record contains only her bare assertions on this issue. In Louisiana, she has a good job. Although the mother claims that there are superior educational opportunities for the child in Indiana, the evidence and testimony do not solidly establish this fact. There is no showing that the relocation will enhance the general quality of life for the mother and the child.
 

 The reasons for the relocation are aimed chiefly at limiting contact between the mother and the father.
 

 IsnThe mother currently has stable employment in Louisiana. The relocation is not necessary to improve her circumstances. The father has abided by his support obligations.
 

 The record shows that the father could not readily relocate to Indiana and continue his career as an employee of the United States Air Force in his current capacity.
 

 Both parents have engaged in violence toward the other. The father has obtained counseling. Although the mother claims that the father abuses alcohol, there is testimony that he has limited his intake.
 

 Regarding other factors affecting the best interest of the child, as discussed above, the mother suffers from depression and has recently expressed suicidal tendencies.
 

 After analyzing and applying the La. R.S. 9:355.12 factors to this case, we find, as did the trial court, that relocation with the mother to Indiana is not in the best interest of the child.
 

 Further, we find that the trial court did not err in rejecting Ms. Booker’s recommendation regarding relocation. As observed by the trial court, Ms. Booker had faulty information and conclusions in several areas. She erroneously concluded that the maternal and paternal extended family live in Indiana. When questioned about this, Ms. Booker maintained that the maternal grandparents live in Indiana. Actually, Sandra’s parents live in Tennessee and Steve’s family lives in Texas. The only relatives the mother has living in Indiana are her sister’s family and the parties’ emancipated daughter.
 

 _|jjMs. Booker did not recommend a 50/50 joint custody arrangement if relocation was not allowed because of the father’s variable work schedule and the possibility of deployment. However, Lieutenant Colonel Joseph Jones, the father’s supervisor, testified that the father now has a position with regular hours and no chance of deployment. The witness testified that the unit had been converted to flight training and would not be deployed.
 

 For these reasons, we find that the trial court did not err in rejecting Ms. Booker’s recommendations. We also find that relocation with Sandra to Indiana is not in the best interest of the child.
 

 CHANGE IN CIRCUMSTANCES
 

 Sandra contends that the trial court erred in modifying domiciliary custody
 
 *656
 
 without a showing of a material change in circumstances since the rendition of the last custody order. This argument is without merit.
 

 Legal Principles
 

 The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131.
 
 Luplow v. Luplow, supra.
 
 In cases where the original custody decree is a stipulated judgment and the rule of
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La.1986), is inapplicable, the party seeking modification must prove: (1) that there has been a material change of circumstances since the original custody decree was entered; and (2) that the proposed modification is in the best interest of the child.
 
 Luplow v. Luplow, supra.
 
 See also
 
 Hobbs v. Hobbs,
 
 42,353 (La.App. 2d Cir.8/15/07), 962 So.2d 1148.
 

 12gln determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case.
 
 Luplow v. Luplow, supra.
 

 According to La. C.C. art. 134, the relevant factors to be considered in determining the best interest of the child in custody cases may include the following:
 

 (1) The love, affection, and other emotional ties between each party and the child.
 

 (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
 

 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
 

 (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
 

 (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
 

 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
 

 (7) The mental and physical health of each party.
 

 (8) The home, school, and community history of the child.
 

 (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
 

 (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
 

 (11) The distance between the respective residences of the parties.
 

 |¾⅞(12) The responsibility for the care and rearing of the child previously exercised by each party.
 

 The court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not required to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented.
 
 Luplow v. Luplow, supra.
 

 The ultimate “best interest of the child” decision remains squarely in the exclusive province of the trial court, a decision which necessarily focuses on all of the evidence and testimony presented.
 
 Luplow v. Luplow, supra.
 

 
 *657
 
 Discussion
 

 In the instant case, the parties had a stipulated judgment regarding child custody. The parties agreed to joint custody with Sandra designated as the domiciliary parent. Therefore, any change in that arrangement requires a showing of a material change in circumstances and that a change from the original decree is in the best interest of the child.
 

 The trial court’s reasons for judgment contain an analysis of the factors set forth under La. C.C. art. 134. The trial court found that both parents love the child and the child is bonded to both parents.
 

 The trial court found that both parties can give love and affection to the child, but the mother’s chronic depressive disorder affects her ability to provide guidance and act as a proper role model.
 

 [^Regarding the capacity to provide food, clothing, shelter and material needs, the trial court found that this factor weighed slightly in favor of the father due to his larger income. However, the trial court considered that the child support award to the domiciliary parent can substantially offset this factor.
 

 The trial court determined that the child has not lived in a stable, adequate environment due to the discord in the marriage and the depressive disorder of the mother.
 

 The trial court concluded that there was no permanence, as a family unit, of the existing or custodial homes brought about by the dissolution of the marriage, the move by one child to Indiana, and the intent of the adult child to remain in Louisiana.
 

 The trial court stated that the moral fitness of the parties is not a factor.
 

 As to the mental and physical health of the parties, the court found that the father was in excellent physical condition and there was no evidence that he suffered from any mental instability or illness. On the other hand, the mother suffers from a hyperactivity disorder and depression.
 

 The trial court concluded that the home, school, and community history of the child was not an issue in this case.
 

 The trial court noted that the child declined to express a preference as to custodial parent.
 

 The trial court determined that the father was much more willing and able to facilitate a close relationship between the child and the other parent. 12⅞According to the trial court, the mother somewhat abused her position as domiciliary parent.
 

 The trial court acknowledged that the parties live within a few miles of each other now, but would not if the mother moves to Indiana.
 

 The trial court stated that both parties shared the responsibility for raising the child. The court found that there was evidence of the father cooking and helping with homework. Although the court did not note any evidence of the mother helping with homework, the court assumed that she shared in rearing the children.
 

 Based upon these factors, the trial court found that the best interest of the child would be served by designating the father as the domiciliary parent of the child.
 

 Sandra contends that the trial court was persuaded to change domiciliary custody of the child to Steve based upon the pictures depicting a messy house and upon evidence of her depression. She argues that the living conditions in the family home had always been messy and that her depression predated the divorce. Therefore, she claims that these factors do not constitute a material change in circumstances sufficient to warrant a change of domiciliary custody.
 

 
 *658
 
 Sandra moved into a clean house owned by the parties and previously used as rental property. While the parties’ residence may have been messy during the marriage, there was testimony that the conditions shown at trial developed since the separation and were worse than during the marriage. Steve testified that during the marriage, he cleaned the house sometimes.
 

 12plt was also shown at trial that Sandra’s depression was worse since the breakup of the marriage. The record shows that she threatened to commit suicide twice in two days. While she has suffered from depression for many years, there was no showing of previous suicidal tendencies. The record also contains testimony that Angela was increasingly troubled by her mother’s behavior, at one point text messaging her father that Sandra was scaring her. These factors, particularly Sandra’s suicide threats, are sufficient to show a material change in circumstances warranting a change of domiciliary custody to Steve. Also, the father’s work circumstances have changed. His work hours are now more regular.
 

 Based upon these facts, the trial court did not err in finding a material change in circumstances and in concluding that changing the domiciliary parent to Steve was in the best interest of the child.
 

 VIOLATION OF THE EXCLUSIVE USE AND OCCUPANCY OF THE HOME
 

 Sandra claims that the trial court erred in finding that Steve did not violate her exclusive use and occupancy of the home when he obtained pictures of the inside of the house which were admitted into evidence. This argument is without merit.
 

 Discussion
 

 This argument arises from an incident in which Steve entered the residence occupied by Sandra and Samantha to retrieve the child’s luggage for visitation. After observing the poor condition of the house, Steve took pictures which he presented to Ms. Booker. The photographs were ultimately introduced into evidence in this case. Steve claims that he went 127⅛⅛ the house with Sandra’s permission to get the child’s suitcase for visitation. Sandra argues that the trial court was wrong in stating that the house was unlocked and that she had given Steve permission to enter the house. She states that Samantha had permission to go into the house to get her suitcase and that she invited Steve inside to see her turtle.
 

 This issue turns on a credibility call of the witnesses. The trial court found Steve’s testimony credible that he had permission to be in the house to retrieve the child’s luggage. We do not find that the trial court was manifestly erroneous in determining the father’s testimony to be credible and in failing to find any violation of the mother’s rights in this matter. Accordingly, the trial court’s decision in this regard is affirmed.
 

 CHILD SUPPORT FOR EMANCIPATED DAUGHTER
 

 Sandra alleges that the trial court erred in failing to find that Steve continued to owe child support for their emancipated daughter, Angela. According to Sandra, an award of child support continues with respect to any unmarried child who attains the age of majority or to an emancipated child as long as the child is a full time student in good standing in a secondary school or its equivalent, has not turned 19, and is dependent on either parent. Sandra maintains that Angela was emancipated in order to allow her to relocate to Indiana. She is not yet 19 years old and continues to be a student in good standing in a secondary school. Angela is
 
 *659
 
 in need of knee surgery. She is living with her aunt and uncle who need help paying for Angela’s medical care. Sandra argues that the trial court should have at |2aleast ordered Steve to maintain medical insurance for Angela. These arguments are without merit.
 

 Legal Principles
 

 Regarding the termination of child support upon majority or emancipation, La. R.S. 9:315.22(0 provides:
 

 C. An award of child support continues with respect to any unmarried child who attains the age of majority, or to a child who is emancipated relieving the child of the disabilities attached to minority, as long as the child is a full-time student in good standing in a secondary school or its equivalent, has not attained the age of nineteen, and is dependent upon either parent. Either the primary domiciliary parent or the major or emancipated child is the proper party to enforce an award of child support pursuant to this Subsection.
 

 Discussion
 

 Under La. R.S. 9:315.22(0, in order for an award of child support to continue for an emancipated child, the child must be a full-time student in good standing in a secondary school or its equivalent, not yet 19 years old, and dependent upon either parent. In finding that Steve was no longer required to provide child support for Angela, the trial court relied upon
 
 Authement v. Authement,
 
 96-1289 (La.App. 1st Cir.5/9/97), 694 So.2d 1129.
 
 [3]
 
 In
 
 Authement,
 
 the 18-year-old daughter of the parties moved in with a boyfriend for a couple of months before receiving her high school diploma. She later returned to her mother’s house to live. The trial court found that during the time that she lived with the boyfriend, she was not dependent upon either of her parents.
 

 1 agThe father argues that when Angela was emancipated and moved to Indiana, she moved in with her aunt and uncle and is supported by them. Therefore, she ceased to be dependent upon either of her parents. Angela’s aunt, Karen Zimmerman, testified that she and her husband provide Angela a place to live, food, and transportation. They have paid the doctor’s fee for Angela’s knee surgery, but have not yet paid the hospital portion of the medical bill. They were not able to cover Angela on their health care insurance. At trial, they requested that Steve maintain health insurance on Angela. Ms. Zimmerman stated that Sandra has sent her some cash for Angela’s use, but did not specify the amount received.
 

 Steve testified that he has maintained medical insurance for Angela and gave her stock valued at $10,000.
 

 Because Ms. Zimmerman testified that she and her husband are supplying all the material needs of the child, Angela is not dependent upon her parents for support. Therefore, the trial court did not err in denying child support for Angela. However, we strongly encourage Steve to maintain medical insurance for Angela. We also urge both parents to provide for Angela’s needs. This is in the nature of a natural obligation under La. C.C. arts. 1760 and 1761.
 
 [4]
 
 We note that, should
 
 *660
 
 Angela become Independent upon her parents prior to attaining the age of 19, while enrolled as a full-time student in good standing in a secondary school or its equivalent, she can petition the court for child support. La. R.S. 9:315.22.
 

 FAIR TRIAL
 

 Sandra alleges that she was denied a fair trial due to the time limitations placed upon the presentation of the evidence and testimony. This matter was tried on November 7, 24 and 26, 2008. Sandra claims that on the first day, the judge held court for only 1½ hours. On November 26, the judge cut court short for the Thanksgiving holiday. She contends that she was not able to present evidence about the numerous times that the police were called for domestic violence and she was not able to make any rebuttal. This argument is without merit.
 

 Legal Principles
 

 La. Constitution Art. 1, § 22 provides:
 

 All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
 

 La. C.C.P. art. 1631 provides, in pertinent part:
 

 The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
 

 The court’s power under La. C.C.P. art. 1631 to control trial proceedings is limited by the phrase “so that justice is done.” The due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantee litigants a right to a |mfair hearing. However, “due process” does not mean litigants are entitled to an unlimited amount of the court’s time.
 
 Goodwin v. Goodwin, supra.
 

 Discussion
 

 The trial court in the present case did not limit the time the parties had to present evidence in the same way that the trial court did in
 
 Goodwin.
 
 In
 
 Goodwin,
 
 each party was given a specific amount of time to present its case. On the first day of trial in the present matter, November 7, 2008, the'trial court informed the parties that it had only 1½ hours of trial time available that day. The trial judge was defeated for reelection and had only two remaining trial dates, November 24 and 26, 2008, before the end of his term in office. The trial court cut the proceedings short on November 26, 2008, due to the impending Thanksgiving holiday. The trial court stated that if the proceedings went beyond the amount of trial time available, an interim order would be entered.
 

 The parties made strategy decisions and finished presenting their cases in the time allotted. The record shows that Sandra utilized the bulk of the trial time available and called numerous witnesses. Although Sandra complains that, because of the time constraints, she was not able to present evidence of the 13 times she claims the police were called for domestic disturbances, the record simply fails to demonstrate that she was prevented from presenting any relevant evidence in this matter. The choice not to introduce the evidence or to make a proffer of the evidence was a strategy choice made at trial. By failing to introduce the evidence or make a proffer, |32Sandra has waived the right to complain of its exclusion on ap
 
 *661
 
 peal. See and compare
 
 Goodwin v. Goodwin, supra.
 

 Further, Sandra was given the opportunity to present rebuttal evidence, but chose not to do so. The record in this case does not show that Sandra’s due process rights were violated.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the judgment of the trial court in all respects. Costs in this court are assessed to Sandra Schmutz Smith.
 

 AFFIRMED.
 

 [1]
 

 . Sandra cites
 
 Lewis v. Lewis, supra,
 
 in which this court reversed the trial court for failing to apply the PSFVRA. She claims that this court should again reverse the trial court and award domiciliary custody of Samantha to her and allow her to relocate to Indiana. The case of
 
 Lewis v. Lewis, supra,
 
 is factually distinguishable from the present case. In
 
 Lewis,
 
 
 *652
 
 the trial court failed to apply the PSFVRA even though the husband had seriously injured the wife, resulting in hospitalization.
 

 [2]
 

 . La. R.S. 9:355.12 provides:
 

 A. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
 

 (1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.
 

 (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
 

 
 *654
 
 ís) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
 

 (4) The child's preference, taking into consideration the age and maturity of the child.
 

 (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
 

 (6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
 

 (7) The reasons of each parent for seeking or opposing the relocation.
 

 (8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
 

 (9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
 

 (10) The feasibility of a relocation by the objecting parent.
 

 (11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
 

 (12) Any other factors affecting the best interest of the child.
 

 B. The court may not consider whether or not the person seeking relocation of the child will relocate without the child if relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed.
 

 [3]
 

 .
 
 Authement v. Authement, supra,
 
 was abrogated on other grounds in
 
 Stogner v. Stogner,
 
 1998-3044 (La.7/7/99), 739 So.2d 762.
 

 [4]
 

 . La. C.C. art. 1760 provides:
 

 A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance. La. C.C. art. 1761 states, in pertinent part: A natural obligation is not enforceable by judicial action. Nevertheless, whatever has
 
 *660
 
 been freely performed in compliance with a natural obligation may not be reclaimed.